TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-907 |
| of | : | |
| | : | March 7, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE JAMES E. ROGAN, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May members of the Burbank City Council simultaneously serve as members of the Burbank-Glendale-Pasadena Airport Authority Commission?

CONCLUSION

Members of the Burbank City Council may simultaneously serve as members of the Burbank-Glendale-Pasadena Airport Authority Commission.

ANALYSIS

The Burbank-Glendale-Pasadena Airport, commonly known as the Burbank Airport, is governed by the Burbank-Glendale-Pasadena Airport Authority Commission. The airport authority was established pursuant to the Joint Exercise of Powers Act (Gov. Code, §§ 6500-6599; "Act")[1] and is a joint exercise of powers agency comprised of the three named cities. The joint exercise of powers agreement under which the airport authority operates provides that the governing body of each of the cities is to name three members to the commission. The agreement specifically contemplates that such

_____

[1] All section references are to the Government Code unless otherwise indicated.

.                                                                                              94-907

appointments may be the city council members themselves. The agreement, for example, states with respect to commission members:

". . . any member who also serves as a member of the governing body of any [constituent city] shall automatically forfeit such member's membership on the Commission if such member ceases to be a member of the governing body [of the constituent city]. . . ."

We are asked whether, in view of the common law prohibition against a person simultaneously holding incompatible offices, a city council member of a constituent city (here, the City of Burbank) may be appointed to be a member of the commission. We conclude that a city council member may be so appointed.

In 66 Ops.Cal.Atty. Gen. 176, 177-178 (1983), we summarized the common law rule prohibiting the simultaneous holding of incompatible public offices:

"`Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other.' (38 Ops.Ca.Atty.Gen. 113 (1961).

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The policy set forth in *People ex rel. Chapman* v. *Rapsey*, *supra*, 16 Cal.2d 636 comprehends prospective as well as present clashes of duties and loyalties. (See 63 Ops.Cal.Atty.Gen. 623, *supra*.)

"`Neither is it pertinent to say that the conflict in duties may never arise, it is enough that it may, in the regular operation of the statutory plan. . . .' (3 McQuillan, Municipal Corporations (3d Ed. 1973), § 12.67, p. 297).

"`[O]nly one significant clash of duties and loyalties is required to make . . . offices incompatible. . . .' (37 Ops.Cal.Atty.Gen. 21, 22 (1961).) Furthermore, `[t]he existence of devices to avoid . . . [conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed. . . .' (38 Ops.Cal.Atty.Gen. 121, 125 (1961).) Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine. A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible. (*People ex rel. Chapman* v. *Rapsey*, *supra*, 16 Cal.2d 636, 644). Both positions, however, must be offices. If one or both of the positions is a mere employment as opposed to a public office, the doctrine does not apply. (See 58 Ops.Cal.Atty.Gen. 109, 111 (1975)."

Accordingly, for the common law rule to apply to two positions, both positions must be "public offices," a potential for conflict in duties or loyalties must be present, and there must be an "absence of statutes suggesting a contrary result."

We need not determine definitively whether both positions here are public offices for purposes of the incompatible offices prohibition.[2] Nor do we need to analyze the duties of a city council member *vis-a-vis* the duties of a commission member. Notwithstanding the common law doctrine prohibiting the holding of incompatible offices, the Legislature has abrogated the common law rule for joint exercise of powers agencies.

In *American Canyon Fire Protection Dist.* v. *County of Napa* (1983) 141 Cal.App.3d 100, 104, the court concluded that the members of a county board of supervisors could act as the governing board of a special district and distribute county funds to the district, stating:

> "Although a conflict of interest may arise under the common law rule against incompatible offices, `There is nothing to prevent the Legislature . . . from allowing, and even demanding, that an officer act in a dual capacity.' (*McClain* v. *County of Alameda* (1962) 209 Cal.App.2d 73, 79.) Appellants rely heavily on a string of opinions by the California Attorney General as support for their contention that the board's alleged conflict of interest invalidated the distribution, but fail to respond to the *McClain* case, or acknowledge that the Attorney General opinions give full recognition to *McClain.* For example, in 63 Ops.Cal.Atty.Gen. 748 (1980), it was noted, at page 750, that `The Legislature may . . . and often does abrogate the common law doctrine when it considers it necessary or convenient to permit officers to hold incompatible offices. (See *McClain* v. *County of Alameda* [supra, at p. 79]; 61 Ops.Cal.Atty.Gen. 396, 398 (1978).)'" (Fn. omitted.)

We have discussed the Legislature's abrogation of the common law rule in a variety of situations. (See, e.g., 76 Ops.Cal.Atty.Gen. 81, 85 (1993); 76 Ops.Cal.Atty. Gen. 38, 43, fn. 4; 74 Ops.Cal.Atty.Gen. 116, 117, fn. 1; 74 Ops.Cal.Atty.Gen. 86, 88 (1991); 66 Ops.Cal.Atty.Gen. 293, 295-302 (1983); 15 Ops.Cal.Atty.Gen. 108, 109-110 (1950).)

Examining the relevant provisions of the Act, we find that "two or more public agencies by agreement may jointly exercise any power common to the contracting parties . . . ." (§ 6502.) The agreement "shall state the purpose of the agreement or the power to be exercised . . . [and]

---

[2]Undoubtedly a city council member holds a public office. (See § 36502.) We have, however, indicated that a member of the governing body of a joint exercise of powers agency may not be an officer, since the position arises by virtue of a contract. (58 Ops.Cal.Atty.Gen. 109, 112 (1975).) However, we have considered such persons to be public officers for some purposes. (See 23 Ops.Cal.Atty.Gen. 146 (1954); 15 Ops.Cal.Atty.Gen. 108 (1950).) As stated in *Neigel* v. *Superior Court* (1977) 72 Cal.App.3d 373, 378, with respect to police officers: "the fact that policemen have been held to be public officers for certain purposes does not lead inevitably to the conclusion that they are `officers' for all purposes." Comprehensive discussions as to what generally constitutes a public office may be found in a number of our opinions. (See, e.g., 68 Ops.Cal.Atty.Gen. 337 (1985); 58 Ops.Cal.Atty.Gen. 109 (1975); see also *Dibb* v. *County of San Diego* (1994) 8 Cal.4th 1200, 1211-1213.)

shall provide for the method by which the purpose will be accomplished or the manner in which the power will be exercised." (§ 6503.) The agreement may provide "for the creation of an agency or entity which is separate from the parties to the agreement and is responsible for the administration of the agreement." (§ 6503.5.) "The agency or entity provided by the agreement to administer or execute the agreement may be one or more of the parties to the agreement or a commission or board constituted pursuant to the agreement. . . ." (§ 6506.)[3] Section 6508 sets forth numerous powers of the administering agency. In 1969 (Stats. 1969, ch. 966), section 6508 was amended to provide:

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "The governing body of any agency having the power to sue or be sued in its own name, created by an agreement entered into after the amendment to this section at the 1969 Regular Session of the Legislature, between parties composed exclusively of parties which are cities, counties, or public districts of this state, irrespective of whether all such parties fall within the same category, may as provided in such agreement, and in any ratio provided in the agreement, be composed exclusively of officials elected to one or more of the governing bodies of the parties to such agreement. Any existing agreement composed of parties which are cities, counties, or public districts which creates a governing board of any agency having the power to sue or be sued may, at the option of the parties to the agreement, be amended to provide that the governing body of the created agency shall be composed exclusively of officials elected to one or more of the governing boards of the parties to such agreement in any ratio agreed to by the par ties to the agreement. The governing body so created shall be empowered to delegate its functions to an advisory body or administrative entity for the purposes of program development, policy formulation, or program implementation, provided, however, that any annual budget of the agency to which the delegation is made must be approved by the governing body of the Joint Powers Agency.
>
> "In the event that such agency enters into further contracts, leases or other transactions with one or more of the parties to such agreement, an official elected to the governing body of such party may also act in the capacity of a member of the governing body of such agency."

As stated in the Legislative Counsel's Digest with respect to the 1969 amendment of section 6508:

> "Permits governing board of agency having power to sue or be sued, created by an agreement entered into after this amendment between parties which are cities, counties or public districts, and permits existing boards created by such an agreement,

---

[3]Section 6506 appears itself to constitute an implicit abrogation of the common law rule, since if a party to the agreement is designated to administer the agreement, presumptively this would be accomplished through its governing body, such as a city council or county board of supervisors. However, we need not rely solely on section 6506 for resolution of the question presented; clear evidence of such abrogation is provided elsewhere in the Act as discussed below. We also note that pursuant to subdivision (d) of section 6504, personnel of one or more of the parties may be provided in lieu of monetary contributions or advances; such personnel could be, for example, city officers.

to be composed exclusively of officials elected to one or more of the governing bodies of such parties, in any ratio provided in the agreement.

"Allows such governing body to delegate its functions to an advisory body or administrative entity if annual budget of delegatee is subject to approval of delegating governing body.

"Specifically allows members of governing body of joint powers agency to act in such official capacity when joint powers agency enters into contracts, leases, or other transactions with party to joint powers agreement of which he is a member of the governing body."

Applying the applicable rules of statutory construction,[4] we find that the amendment of section 6508 in 1969 was intended to ensure that the common law rule prohibiting the holding of incompatible offices would not be applicable to joint exercise of powers agencies or their governing boards.

The conclusion that the common law rule is not applicable to joint exercise of powers agencies is supported by several of our prior opinions. In 57 Ops.Cal.Atty.Gen. 295 (1974), for example, we discussed local criminal justice planning boards formed under the terms of the Act. After quoting the language of section 6508, we stated:

"To summarize the foregoing, if a county and its cities enter into a joint powers agreement, that agreement may specify how the local planning district shall be governed. This includes the designation of those individuals who will serve as the district governing body, subject to federal guidelines for the composition of such a governing body. Therefore, the board of supervisors would not be the governing body of the district unless the board were so designated in the joint powers agreement or arrangement. *However, members of the board of supervisors may serve on its governing board.*" (*Id.,* at p. 301, emphasis added.)

Based upon the foregoing authorities, we conclude that members of the Burbank City Council may simultaneously serve as members of the Burbank-Glendale-Pasadena Airport Authority Commission.

* * * * *

---

[4]"In construing a statute, a court's objective is to ascertain and effectuate the underlying legislative intent." (*Moore* v. *California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1012.) "`To discern legislative intent, we must examine the legislative history and statutory context of the act under scrutiny.'" (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 743; see *Rourke* v. *Troy* (1993) 17 Cal.App.4th 880, 883.) "The Legislative Counsel's Digest is a proper resource to determine the intent of the Legislature." (*Victoria Groves Five* v. *Chaffey Joint Union High School District* (1990) 225 Cal.App.3d 1548, 1555; see *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300; *Crowl* v. *Commission on Professional Competence* (1990) 225 Cal.App.3d 334, 347.)