OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

|  |  |
|---|---|
| OPINION | : |
| | : No. 90-491 |
| of | : |
| | : JUNE 13, 1990 |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| ANTHONY S. DA VIGO | : |
| Deputy Attorney General | : |
| | : |

The BRITTAN SCHOOL DISTRICT by its Board of Trustees, applicant herein, filed its application for leave to sue in quo warranto on April 3, 1990. On April 23, 1990, proposed defendant ELLWOOD D. MUNGER filed his opposing memorandum of points and authorities. On April 30, 1990, applicant filed its reply to the opposition.

CONCLUSION

It is concluded that leave to sue should be GRANTED.

ANALYSIS

Material Facts

Proposed defendant Ellwood D. Munger ("Munger", *post*) was elected, qualified, and assumed the office of trustee on the Board of Trustees of the Brittan School District, County of Sutter, for a four year term commencing November 8, 1988.

On or about June 29, 1989, Munger was elected, qualified, and assumed a second public office as a director on the Board of Directors of the Sutter Community Services District ("CSD", *post*), for a term which expires in November, 1992.

CSD is located entirely within the pupil residence area of the Brittan School District ("BSD", *post*), and was formed under the Community Services District Law for the purpose of supplying water for domestic use, irrigation, sanitation, industrial use, fire protection and recreation.

Legal Issues

The principal issue presented is whether the office of school district trustee and the office of community services district director are incompatible, and whether upon his assumption of the latter office, Munger forfeited the former.

1.                                                                    90-491

The application concerns the common law doctrine of incompatible public offices as applied to dual membership on BSD and CSD. The doctrine prevents a person from holding simultaneously two public offices if the performance of the duties of either office could have an adverse effect on the other. (68 Ops.Cal.Atty.Gen. 337, 338-339 (1985).) In 71 Ops.Cal.Atty.Gen. 39, 39-40 (1988), we summarized as follows:

"`Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other.' (38 Ops.Cal.Atty.Gen. 113 (1961).)

"(See also, generally, People *ex rel* Chapman v. Rapsey (1940) 16 Cal.2d 636, 641-642, and e.g. 65 Ops.Cal.Atty.Gen. 606 (1982); 64 Ops.Cal.Atty.Gen. 288, 289 (1981); 64 Ops.Cal.Atty.Gen. 137, 138-139 (1981); 63 Ops.Cal.Atty.Gen. 623 (1980); 63 Ops.Cal.Atty.Gen. 607, 608 (1980).)

"The policy set forth in People ex rel Chapman v. Rapsey, *supra*, 16 Cal.2d 636 comprehends prospective as well as present clashes of duties and loyalties. (See 63 Ops.Cal.Atty.Gen. 623, *supra*.)

"`...Neither is it pertinent to say that the conflict in duties may never arise; it is enough that it may, in the regular operation of the statutory plan. ...' (3 McQuillin, Municipal Corporations (3d Ed. 1973, 12.67, p. 297).

"`[O]nly one significant clash of duties and loyalties is required to make ... offices incompatible....' (37 Ops.Cal.Atty.Gen. 21, 22 (1961).) Furthermore, `[t]he existence of devices to avoid ... [conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed. (38 Ops.Cal.Atty.Gen. 121, 125 (1961).) Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine. A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible. (People ex rel. Chapman v. Rapsey, *supra*, 16 Cal.2d 636, 644.) Both positions, however, must be offices. If one or both of the positions is a mere employment as opposed to a public office, the doctrine does not apply. (See 58 Ops.Cal.Atty.Gen. 109, 111 (1975).)'"

For the purposes of the doctrine, a public office is (1) a position in government, (2) which is created or authorized by the Constitution or by law, (3) the tenure of which is continuing and permanent, not occasional or temporary, (4) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state. (68 Ops.Cal.Atty.Gen, *supra*, 342.) In *Schaefer* v. *Superior Court* (1952) 113 Cal.App.2d 428, 432-433, the court clarified the meaning of "sovereign powers of the state" as follows:

"If specific statutory and independent duties are imposed upon an appointee in relation to the exercise of the police powers of the State, if the appointee is invested with independent power in the disposition of public property or with the power to incur financial obligations upon the part of the county or state, if he is empowered to act in those multitudinous cases involving business or political dealings between individuals and the public, wherein the latter must necessarily act through an official agency, then such functions are a part of the sovereignty of the state."

We have previously concluded that a member or trustee of a school district governing board holds a public office (68 Ops.Cal.Atty.Gen. 240, 241 (1985); 66 Ops.Cal.Atty.Gen. 382, 384 (1983); 65 Ops.Cal.Atty.Gen. 606 (1982); 56 Ops.Cal.Atty.Gen. 488, 489 (1973); 48 Ops.Cal.Atty.Gen. 141 (1966)), as does a member of the board of directors of a community services district (68 Ops.Cal.Atty.Gen, *supra,* 344).

A community services district is established under the provisions of the Community Services District Law (Gov. Code, § 61000 et seq.) and may consist of designated unincorporated territory of one or more counties. (Gov. Code, §§ 61100-61102.) A district is governed by a board of three or five directors. (Gov. Code, §§ 61200, 61300.) We have observed that such districts may possess many of the rights, and perform many of the functions, normally regarded as municipal in nature. (67 Ops.Cal.Atty.Gen. 145, 148 (1984); 27 Ops.Cal.Atty.Gen. 261, 262 (1956).) These functions, which may be designated in the petition for formation (Gov. Code, § 61600), or thereafter by resolution and special election (Gov. Code, § 61601), include (a) water supply, (b) sewage disposal, (c) refuse disposal, (d) fire protection, (e) parks and recreation, (f) street lighting, (g) mosquito abatement, (h) police protection, (i) library service, (j) street maintenance, (k) construction of bridges, curbs, and other works incidental to streets, (l) conversion of utilities to underground locations, (m) ambulance service, (n) airports, and (o) transportation services. (Gov. Code, § 61600.)

The function specified in the CSD formation petition is to supply the inhabitants of the district with water for domestic use, irrigation, sanitation, industrial use, fire protection, and recreation. (Gov. Code, § 61600, subd. (a).) We predicate upon this function alone, without regard to the numerous others which may be assumed in the future, our determination that principal or important duties, functions, and responsibilities of the respective offices either are or might come into conflict.

Government Code section 61621 prescribes certain powers which may be exercised by a community services district:

"A district may prescribe, revise and collect rates or other charges for the services and facilities furnished by it, and may ... provide for the collection of charges. Remedies for their collection and enforcement are cumulative and may be pursued alternatively or consecutively as the local agency determines.

"A district may provide for a basic penalty of not more than 10 percent for nonpayment of the charges within the time and in the manner prescribed by it, and in addition may provide for a penalty of not exceeding one-half of 1 percent per month for nonpayment of the charges and basic penalty. It may provide for collection of the penalties herein provided for.

"In case any charges for water or other services, or either, remain unpaid the amount of the unpaid charges may in the discretion of the district be secured at any time by filing for record in the office of the county recorder of any county, a certificate specifying the amount of such charges and the name and address of the person liable therefor.

"From the time of recordation of the certificate, the amount required to be paid together with interest and penalty constitutes a lien upon all real property in the county owned by the person or afterwards, and before the lien expires, acquired by him. The lien has the force, priority, and effect of a judgment lien and shall continue

for 10 years from the date of the filing of the certificate unless sooner released or otherwise discharged...."

Under this section, defendant, as a CSD director, is responsible for the fixing of rates for all users, including school districts, for prescribing different rates for different uses, and for assigning users into appropriate rate categories. In this regard, the exercise of his judgment and discretion as to the best interests of CSD as a provider of services, and as to those of BSD as a ratepayer, is necessarily divided.

All payments from the funds of a school district shall be made by written order, signed by a majority of the members of its governing board. (Ed. Code, §§ 42631, 42632.) As a BSD trustee, defendant is responsible for the approval for payment of the district's obligations, including the water bill. (Ed. Code, §§ 35200, 42631.) Again, the exercise of his judgment and discretion as to the respective interests of each agency, one as the obligor and the other as obligee, is manifestly in conflict.

Further, if a disputed charge remained unpaid, defendant CSD director would be responsible for collection. In this regard, he is authorized under Government Code section 61621, *supra*, to provide for a ten percent penalty for nonpayment of charges, to file for record in the office of the county recorder a lien on the school's real property to secure unpaid charges, penalties, and interest, and under section 61612 of that code to initiate an action at law for the collection and enforcement of charges. Shall defendant sit as a public officer on both sides of such dispute?

In addition to his responsibilities in connection with the fixing of rates and collection of charges, defendant may be concerned in his official capacities with a contract between the two agencies. Prior to its repeal (Stats. 1987, ch. 1452, § 274), Education Code section 39011 provided as follows:

"Where a city, district, or other political corporation or subdivision of the state is authorized by law to furnish sewerage, water, or other utility facilities to a school district and is not required to provide for the installation thereof to such school district at its own expense, it may enter into an agreement with such school district whereby the cost of installation will be paid by the school district under such terms as the parties may agree to, with reimbursement from charges made or to be made to other users of such facilities as may be agreed upon between the parties, save insofar as other provisions of law control the terms of such reimbursement....

"The governing body of any entity mentioned in the preceding paragraph may by contract reimburse a school district for such portion of such utility facilities as it deems constructed for the benefit of or usable by persons outside of the school site, provided such facilities are dedicated by the school district to the public. Such contract shall provide that the governing body may collect from any person using such facilities, for the benefit of property not within the school site, a reasonable charge for such use. The term `person' herein shall have the same meaning as in Section 11545 of the Business and Professions Code." (Emphasis added.)

Section 1 (uncodified) of the 1987 legislation expresses the legislative intent respecting the repeal of section 39011 and other provisions of the Education Code:

"The Legislature finds and declares that, in 1972, the people of the state adopted an amendment to Section 14 of Article IX of the California Constitution, which permits the Legislature to authorize the governing boards of school districts

to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established.

"`It is the intent of the Legislature, in enacting this act, to implement more fully, for the school districts, county boards of education, and the county offices of education in California, the intent of the people in adopting the amendment of Section 14 of Article IX of the California Constitution. The Legislature further finds and declares that, in order to do so, it is necessary to amend or repeal many provisions of the Education Code.

"`Whenever in this act a power, authorization, or duty of a school district governing board, county board of education, or county office of education is repealed or otherwise deleted by amendment, it is not the intent of the Legislature to prohibit the board or office from acting as prescribed by the deleted provisions. Rather, it is the intent of the Legislature, that the school district governing boards, county boards of education, and county superintendents of schools, respectively, shall have the power, in the absence of other legislation, to so act under the general authority of Section 35160 of the Education Code.'"  (Emphasis added.)

A community services district is authorized to enter into such contracts.  (Gov. Code, §§ 61301, 61616.)   A capital facilities fee[1] may be imposed by a public agency upon a school district "after agreement has been reached between the two agencies through negotiations entered into by both parties." (Gov. Code, § 54999.3, subd.(b).)  Shall defendant sit as a public officer on both sides of such negotiations?

It is concluded that the proposed challenge to Munger's claim of entitlement to the continued occupancy of the office of trustee on the BSD board of governors is based on substantial grounds.

The Public Interest

As a general rule, we have viewed the existence of a substantial question of law or fact which calls for a judicial resolution as presenting a sufficient "public purpose" as to warrant the granting of leave to sue.  (See, 67 Ops.Cal.Atty.Gen. 151, 153 (1984).)  Accordingly, leave would be denied only in the presence of other overriding considerations. (See, e.g., 67 Ops.Cal.Atty.Gen., *supra* 161; 36 Ops.Cal.Atty.Gen. 317, 319-320 (1960); 35 Ops.Cal.Atty.Gen. 115, 119 (1960).) We find no such countervailing considerations herein.  Rather, the public as well as each public entity has an interest in the undivided loyalty of its elected officers.  Therefore, the application for leave to sue in quo warranto should be granted.

\* \* \* \* \*

---

[1] A "capital facilities fee" means any nondiscriminatory charge to pay the capital cost of a public utility facility, including one for the provision of water (Gov. Code, § 54999.1, subds. (b) and (d)), such as the installation referred to in Education Code section 39011, *supra*.