BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE BOARD OF SUPERVISORS FOR THE COUNTY OF SACRAMENTO has requested this office to grant leave to sue in quo warranto upon the following question:
Are Gail Woodson, Harry Riebe, and Galen Whitney unlawfully holding public offices as members of the Board of Directors for the Florin Resource Conservation District?
 CONCLUSION
Whether Gail Woodson, Harry Riebe, and Galen Whitney are unlawfully holding public offices as members of the Board of Directors for the Florin Resource Conservation District presents a substantial question of law requiring judicial resolution.
 ANALYSIS
The Florin Resource Conservation District ("District") was formed in 1953 and contains a portion of the territory of the City of Sacramento, City of Elk Grove, and County of Sacramento. It has responsibility within its boundaries "for the control of runoff, the prevention or control of soil erosion, the development and distribution of water, and the improvement of land capabilities." (Pub. Resources Code, §9151)[1] The District has a governing board of directors ("Board") whose members may be appointed in lieu of election. (§9314.) The Board currently consists of five directors, each of whom was appointed to his or her position. (§ 9301.)
The Board has routinely adopted resolutions requesting the Board of Supervisors for the County of Sacramento ("Supervisors") to make appointments of the directors on the Board. The last three appointments, however, were made by the Board itself. The Supervisors have challenged those appointments through the filing of this quo warranto application.
Section 803 of the Code of Civil Procedure authorizes the filing of a quo warranto action "against any person who usurps, intrudes into, or unlawfully holds or exercises any public office. . . ." We entertain little doubt that a Board director holds a public office. (See People ex rel. Chapman v. Rapsey (1940) 16 Cal.2d 636, 639-640; cf., 73 Ops.Cal.Atty.Gen. 268, 270 (1990) [county water district director]; 55 Ops.Cal.Atty.Gen. 36 (1972) [water conservation district director]; 37 Ops.Cal.Atty.Gen. 146, 147 (1961) [soil conservation district director].) Do the three directors in question unlawfully hold their offices or were their appointments by the Board valid?
In deciding whether to grant leave to bring a quo warranto action, we consider initially whether there exists a substantial question of law or fact that requires judicial resolution, and if so, whether the proposed action would serve the public interest. (83 Ops.Cal.Atty.Gen 263 (2000); 83 Ops.Cal.Atty.Gen 181 (2000); 83 Ops.Cal.Atty.Gen 70 (2000).)
With respect to director Gail Woodson ("Woodson"), it appears that on January 19, 2000, the Board notified the Supervisors that it recommended Case Van Steyn ("Van Steyn") for appointment to fill one of two vacancies on the Board caused by the resignation of William Hansen ("Hansen"), whose term of office will expire in November of 2002. On March 7, 2000, the Supervisors requested applications for the two vacancies and directed staff to report on a recommended evaluation and appointment process. On April 24, 2000, the Board notified the Supervisors that it was withdrawing the recommendation of Van Steyn and requested instead the appointment of Woodson. On October 18, 2000, the Board advised the Supervisors that it had appointed Woodson as a director.
With respect to directors Harry Riebe ("Riebe") and Galen Whitney ("Whitney"), it appears that on April 19, 2000, the Board passed a resolution requesting the Supervisors to make appointments to the Board in lieu of holding an election. On April 29, 2000, the Board notified the Supervisors that on April 21, 2000, it had appointed Riebe to fill the unfinished term of Ed Kynaston, who had resigned, and asked the Supervisors to concur in its decision. On May 15, 2000, the Board requested the Supervisors to reappoint the four directors whose terms were to expire on November 24, 2000, including Riebe and Whitney. On January 17, 2001, the Board adopted a resolution reducing the size of the Board from seven to five directors. On the same day, the Supervisors appointed four persons to the Board, in the following order: Ronald Saufferer ("Saufferer"), Ralph Roberts ("Roberts"), Gilbert Albiani ("Albiani") and Whitney. On March 2, 2001, the Board appointed Riebe and Whitney as directors.
Two statutes govern the appointment process for District directors. Section 9314 provides:
 "(a) The term of office of the directors, except those first elected, shall be four years. The expiration of the term of any director does not constitute a vacancy, and the director shall hold office until his or her successor has qualified.
 "(b)(1) As an alternative to the election of directors, the board of directors may, by a resolution presented to the board of supervisors of the principal county, request the board of supervisors to appoint directors, except those first elected. In any election year, the board of directors shall file its request with the board of supervisors not later than 125 days prior to the election. A copy of the resolution shall be furnished to the official responsible for conducting the election at the time it is presented to the board of supervisors of the principal county. The board of supervisors shall appoint directors from those candidates who have filed an application with the board of supervisors, as prescribed by the board of supervisors. If the directors are to be appointed, a notice of election shall not be published, but a notice of vacancy shall be posted pursuant to section 54974 of the Government Code.
 "(2) The resolution shall remain in effect until rescinded by the board of directors, or until a petition requesting the rescission is received by the elections official.
 "(3) The appointment of directors by the board of supervisors does not affect the status of a district as an independent special district.
 "(4) If the board of supervisors does not conduct interviews of potential candidates or make an appointment within 60 days after the expiration of the term, the board of directors may make the appointment.
 "(c) It is the intent of the Legislature to encourage districts to opt for the selection of directors by election, but where directors are appointed pursuant to subdivision (b), it is the intent of the Legislature that the board of supervisors solicit recommendations from within the district, including public, private, and nonprofit entities, and appoint only applicants who are determined by the board of supervisors to have a demonstrated interest in soil and water conservation. In selecting directors pursuant to subdivision (b), the board of supervisors shall endeavor to achieve balanced representation on the board of directors."
Section 9316 additionally states:
 "In case of a vacancy in the office of director appointed pursuant to section 9314, the vacancy shall be filled as provided in section 9314, by appointment for the unexpired term by the board of supervisors of the principal county."
In interpreting these statutes, we are mindful "to effectuate the purpose of the law" as intended by the Legislature. (Wilcox v. Birtwhistle (1999)21 Cal.4th 973, 977.) We must "avoid an interpretation that would lead to absurd consequences." (People v. Jenkins (1995) 10 Cal.4th 234, 246.) "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose. . . ." (Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1159.) Finally, a statute is to be interpreted "in context, examining other legislation on the same subject, to determine the Legislature's probable intent. [Citations.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997)14 Cal.4th 627, 642.)
1. The Woodson Appointment
The Supervisors contend that the Board's appointment of Woodson violated the terms of sections 9314 and 9316. The Supervisors argue that they have the sole authority to make appointments under the terms of section 9316, regardless of how long it may take, when there is an outstanding resolution by the District requesting the Supervisors to make such appointments. Alternatively, if the provisions of section 9314 govern, the Supervisors believe they have the exclusive authority to make the appointment until 60 days after the term in question expires, and here it is conceded that Hansen's term will not expire until November of 2002.
Woodson responds that if the Supervisors have no time limitation in making appointments to fill vacancies pursuant to section 9316, the phrase "as provided in section 9314" would be meaningless. If the time limitation of section 9314 may be ignored, are all the other qualifications and conditions of the statute inapplicable when the Supervisors make an appointment under section 9316? Such a suggestion, she claims, would be an absurd construction of section9316. Woodson argues instead that section 9314
controls the Supervisors' appointment to the office she now holds, but that the statute cannot mean what it says. The 60-day limitation, she believes, must refer to when the Supervisors are notified of a vacancy rather than "60 days after expiration of the term," if the statute is to be given a reasonable interpretation.[2]
We believe a substantial question of law is presented concerning Woodson's appointment and the possible applicability of the 60-day limitation contained in section 9314, subdivision (b)(4). Does it apply here at all; if so, how is it to be construed regarding an appointment to an office the term for which has not expired? Indeed, by use of the word "or," has the Legislature precluded the Board from acting if the Supervisors merely interview candidates "within 60 days after expiration of the term" in question?
2. The Riebe and Whitney Appointments
The District's appointments of Riebe and Whitney present a separate issue. Riebe and Whitney acknowledge that the Supervisors acted within 60 days of the expiration of the terms of the offices they now hold. They argue, however, that the prior appointments of Saufferer and Roberts by the Supervisors were invalid because the Supervisors did not follow certain election law requirements. If the Supervisors' appointments were invalid, the District could appoint them, or so contend Riebe and Whitney.
The problem with this argument is that the election requirements relied upon (see § 9354 ["Elected directors shall qualify within 20 days from the date of receipt of their certificates of election by taking the oath"]; Elec. Code, § 10553 ["the County election officials shall immediately make and deliver to each person elected a certificate of election signed by the County election officials"] concern elections, not appointments to office, such as here. Although the office of a District director may be either elective or appointive, we believe its character at any given time depends upon the circumstances under which the particular director assumed office. Here, a resolution requesting the Supervisors to make District appointments was in effect at the time in question. This resolution mandates application of the appointment procedures until it is rescinded. (§ 9314, subd. (b)(2).) Hence, the specific requirements of section 9354 and Elections Code section 10553 would not apply to these appointments made by the Supervisors. (See §§ 9187, 9314.) Accordingly, the Supervisors have raised a substantial question of law as to the right of Riebe and Whitney to hold their present offices as District directors.
 THE PUBLIC INTEREST
As a general rule, we have viewed the existence of a substantial question of fact or law as presenting a sufficient "public purpose" to warrant the granting of leave to sue in quo warranto. (82 Ops.Cal.Atty.Gen 78, 81-82 (1999).) Accordingly, leave to sue will be denied only in the presence of other overriding considerations. (81 Ops.Cal.Atty.Gen. 94, 98 (1998).) Such considerations include the existence of prior litigation (36 Ops.Cal.Atty.Gen. 317, 319 (1960), whether the issues are pending in a judicial action (73 Ops.Cal.Atty.Gen. 183, 190 (1990), and the relative shortness of time remaining on the term of office in question (83 Ops.Cal.Atty.Gen., supra, at p. 184). We find no such overriding considerations here.
In sum, the residents of the District, the Supervisors, and even the Board have mutual interests in a judicial resolution regarding the procedures to be followed in making appointments to the Board. "In passing upon leave to sue in the name of the People of the State, it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of fact or question of law that the public interest requires to be determined by a court in an action in quo warranto." (28 Ops.Cal.Atty.Gen. 369, 373 (1956).)[3]
The application for leave to sue in quo warranto is GRANTED.
[1] All references hereafter to the Public Resources Code are by section number only.
[2] Additionally, Woodson contends that Government Code section1780 ("Notwithstanding any other provision of law, a vacancy in any elective office on the governing board of a special district . . . shall be filled as provided in this section") controls the appointment process for the office she now holds. As we will discuss in response to a similar argument made by Riebe and Whitney, Woodson's office is not an "elective office." Here, sections 9314 and 9316 control her appointment.
[3] Although certain other arguments have been presented by Woodson, Riebe, and Whitney in "defense" of their right to hold their offices, their arguments do not overcome the public interest in having a judicial resolution of the substantial issues raised by the Supervisors. Their arguments may, of course, be addressed to the court in the quo warranto proceeding.