BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
BEVERLY HARRY AND PATRICK McLERNON request leave to sue in quo warranto upon the following question:
May Jack Goodrich simultaneously hold the two offices of county veterans service officer and undersheriff for the County of Inyo?
 CONCLUSION
Whether Jack Goodrich may simultaneously hold the two offices of county veterans service officer and undersheriff for the County of Inyo does not present a substantial issue of fact or law requiring judicial resolution.
 ANALYSIS
On January 1, 1995, Jack Goodrich ("Defendant") was appointed to the office of undersheriff for the County of Inyo ("County"). On July 17, 2001, Defendant was appointed to the office of county veterans service officer ("CVSO") for the County. Beverly Harry and Patrick McLernon ("Relators") allege that Defendant may not lawfully hold both offices at the same time and request permission to file a "quo warranto" action to remove Defendant from the office of undersheriff.[1]
Code of Civil Procedure section 803 provides in part:
 "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."
An action filed under the terms of this statute is known as a "quo warranto" action; it is the proper remedy to test title to public office. (See, e.g., 86 Ops.Cal.Atty.Gen. 205 (2003) [member of county board of supervisors]; 86 Ops.Cal.Atty.Gen. 194 (2003) [school district board member]; 85 Ops.Cal.Atty.Gen. 239 (2002) [community services district director]; 85 Ops.Cal.Atty.Gen. 90 (2002) [city council member]; 81 Ops.Cal.Atty.Gen. 304 (1999) [city police chief]; 76 Ops.Cal.Atty.Gen. 81 (1993) [water district director].)
In determining whether to grant a request to file a quo warranto action, the Attorney General considers (1) whether the application presents a substantial issue of fact or law requiring judicial resolution and (2) whether granting the application would serve the overall public interest. (86 Ops.Cal.Atty.Gen., supra, at pp. 208-209); 78 Ops.Cal.Atty.Gen. 352, 353 (1995).)
Preliminarily, we note that the office of CVSO may be established by a county board of supervisors pursuant to the provisions of Military and Veterans Code section 970.[2] Section 970 states:
 "(a) The board of supervisors of each county may, but is not required to, appoint, prescribe the qualifications of, and fix the compensation of an officer to be titled `county veterans service officer.' The appointee shall be a veteran.
 "(b) It shall be the duty of the county veterans service officer to administer the aid provided for in this chapter, to investigate all claims, applications, or requests for aid made pursuant to the terms of this chapter, and to perform any other veteran related services as requested by the county board of supervisors.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."[3]
Section 971 provides additional duties for a CVSO:
 "(a) The county veteran service officer shall assist every veteran of any war of the United States and the dependents of every deceased veteran in presenting and pursuing any claim the veteran may have against the United States and in establishing the veteran's right to any privilege, preference, care, or compensation provided for by the laws of the United States or of this state.
 "(b) The county veteran service officer shall present and pursue claims against the United States referred by any public agency pursuant to Section 721."[4]
Section 973 also specifies:
 "The county veteran service officer shall have power to administer and certify oaths and affirmations, take and certify affidavits and acknowledgments, and exercise any other power of a notary public, as a part of his duties under the provisions of this chapter in assisting veterans with respect to their affairs. The county veteran service officer shall not charge any fee for such service."
Finally, section 972 authorizes the Department of Veterans Affairs to assist in funding the activities of a CVSO:
 "(a) The board of supervisors may provide the county veterans service office with any assistance and facilities that it determines to be necessary.
 "(b) If the position of veterans service officer is created and filled, the compensation and expenses of the county veterans service office shall be a county charge, but the Department of Veterans Affairs, out of state moneys available therefor, shall pay each county a portion of those costs in an amount determined by the department, conditioned upon the observance of standards and regulations adopted by, and in compliance with the direction of, the department and its authorized representatives.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
With this background in mind, we address Relators' primary contention that Defendant may not hold the offices of CVSO and undersheriff at the same time due to the common law rule, applicable in California, prohibiting the holding of incompatible public offices. (See Civ. Code, § 22.2; Mott v. Horstmann (1950)36 Cal.2d 388, 391-392; People ex rel. Chapman v. Rapsey, supra,16 Cal.2d at pp. 640-644; Eldridge v. Sierra View Local Hospital Dist. (1990) 224 Cal.App.3d 311, 319; 86 Ops.Cal.Atty.Gen., supra, at pp. 205-206.) Public offices are deemed incompatible if one has a supervisory role over the other or if performance of the duties of one office could have a significant adverse effect on the other. (85 Ops.Cal.Atty.Gen., supra, at p. 240; 80 Ops.Cal.Atty.Gen. 74, 75 (1997); 66 Ops.Cal.Atty.Gen. 176, 177-178 (1983).) In 85 Ops.Cal.Atty.Gen. 60, 61 (2002), we observed:
 ". . . Offices are incompatible if one of the offices has supervisory, auditory, or removal power over the other or if there would be any significant clash of duties or loyalties in the exercise of official duties. Only one potential significant clash of duties or loyalties is necessary to make offices incompatible. If the performance of the duties of either office could have an adverse effect on the other, the doctrine precludes acceptance of the second office. If the second office is accepted, such acceptance constitutes an automatic resignation from the first office. [Citations.]"
A past or present conflict in the performance of the duties of either office is not required for a finding of incompatibility; rather, it is sufficient that a conflict may occur "`in the regular operation of the statutory plan.'" (66 Ops.Cal.Atty.Gen., supra, at p. 177; see 75 Ops.Cal.Atty.Gen. 112, 116 (1992).)
For the prohibition to be applicable, both positions must be found to be "public offices." (See People ex rel. Chapman v. Rapsey, supra, 16 Cal.2d at p. 644; 82 Ops.Cal.Atty.Gen., supra, at p. 73.) In 68 Ops.Cal.Atty.Gen. 337, 342 (1985), we summarized the requirements for finding a "public office" under the common law rule:
 ". . . For the purpose of the doctrine of incompatible public offices, a public office is a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and permanent, not occasional or temporary; (3) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state."
We have interpreted the "sovereign powers" requirement to mean that the position must involve not only governmental functions, but also significant and independent policy-making discretion. (See, e.g., 82 Ops.Cal.Atty.Gen. 83, 84-86 (1999); 78 Ops.Cal.Atty.Gen. 362 (1995); 74 Ops.Cal.Atty.Gen. 82 (1991); 68 Ops.Cal.Atty.Gen., supra, 337; see also, Neigel v. Superior Court (1977) 72 Cal.App.3d 373.) Accordingly, while a person may be an "officer" for some purposes, such characterization is insufficient in itself to meet the test of a "public office" for purposes of the incompatible offices prohibition.
Here, we believe that the position of CVSO is an "employment," not a "public office," for purposes of the incompatible offices doctrine. A CVSO's duties may best be characterized as administrative tasks connected with securing and maintaining veterans' benefits, such as compensation, pension, and disability entitlements, vocational rehabilitation, educational opportunities, and burial rights. A CVSO serves primarily as a facilitator and liaison with other local, state, and federal health and social services departments, advocating for veterans and their families. (See Veterans of Foreign Wars of U.S. v. State (1974) 36 Cal.App.3d 688, 694 ["County veterans' service officers support local welfare claims of indigent veterans, assist them and their families in pursuit of federal benefits and arrange for burials"].) Hence, a CVSO position lacks the "sovereign powers" element for purposes of the common law rule. (See, e.g., Neigel v. Superior Court, supra, 72 Cal.App.3d at pp. 378-379; Schaefer v. Superior Court (1952) 113 Cal.App.2d 428,435-437.)
The additional duty of acting as a notary public (§ 793) does not make the position a "public office" for purposes of the doctrine. Certain of our early opinions (21 Ops.Cal.Atty.Gen. 218 (1953); 9 Ops.Cal.Atty.Gen. 277 (1947); 5 Ops.Cal.Atty.Gen. 59 (1945)) might suggest otherwise; however, in later opinions (43 Ops.Cal.Atty.Gen. 55 (1964); 60 Ops.Cal.Atty.Gen 35 (1977)) we have concluded that the duties of a notary public are best described as ministerial in nature. (See also, e.g., 4 Witkin, Summary of Cal. Law (9th ed. 1988), p. 378 ["A notary's duties are ministerial only"].) Looking to the indices of exercising "sovereign powers" emphasized in our more recent opinions (e.g., 78 Ops.Cal.Atty.Gen., supra, at pp. 366-368), we find that a notary public does not occupy a "public office" for purposes of the incompatible offices rule.[5] Accordingly, this common law doctrine has no application here, and we must deny Relators' application to file a quo warranto action premised on the claim that Defendant's two "offices" are incompatible. (See Stout v. Democratic County Central Com. (1952) 40 Cal.2d 91, 94; 76 Ops.Cal.Atty.Gen. 244, 245-249 (1993).)
Relators make three additional contentions that may be summarily dismissed. The first is that Defendant is not qualified to be the CVSO because the sheriff is not a veteran. While section 970, subdivision (a), requires a CVSO to be a veteran, neither that statute nor any other requires the CVSO's supervisor to be a veteran. Relators also contend that the county board of supervisors may not prescribe holding a P.O.S.T. Management Certificate[6] as a qualification for appointment to the position of CVSO. Not only does section 970, subdivision (a), authorize a county board of supervisors to establish the qualifications for a CVSO, but Relators concede that Defendant has the requisite certificate. Hence, this contention provides no foundation to support a quo warranto action challenging Defendant's right to be the CVSO.
Finally, Relators assert that the county board of supervisors improperly combined the county veterans service office with the sheriff's department without voter approval required under a county initiative measure adopted by the electorate. Whatever may be the merits of this contention,[7] it has no effect upon Defendant's right to be the CVSO. The board of supervisors is authorized by law to appoint Defendant to the position of CVSO regardless of whether any consolidation of county offices or departments has occurred.
Relators' application to file a quo warranto action against Defendant presents no substantial issue of fact or law requiring judicial resolution. Leave to sue is therefore DENIED.
[1] While Relators assert that Defendant should be removed only from the office of CVSO, it is the office of undersheriff, the one acquired first by Defendant, that would be forfeited if a quo warranto action were successful based upon Relators' primary contention. (See People ex rel. Chapman v. Rapsey (1940)16 Cal.2d 636, 644; 82 Ops.Cal.Atty.Gen. 68, 73 (1999); 41 Ops.Cal.Atty.Gen. 88, 91 (1963).)
[2] All references hereafter to the Military and Veterans Code are by section number only.
[3] On June 19, 1975, Defendant was honorably discharged from the United States Army. Accordingly, Defendant qualifies as a "veteran" for purposes of section 970, subdivision (a). (See § 980.)
[4] Section 721 provides:
 "If any public agency which has rendered a service, provided benefits, or furnished assistance to a veteran determines that the costs of rendering the service or providing the benefits or assistance are recoverable from the Veterans' Administration, it shall refer the matter to the county veteran service officer, where applicable, for action pursuant to Section 971 and shall assist the county veteran service officer in any way."
[5] To the extent that 5 Ops.Cal.Atty.Gen. 59, supra, and 21 Ops.Cal.Atty.Gen. 218, supra, are inconsistent with our conclusion, they are disapproved.
[6] "P.O.S.T." is the abbreviation for "Peace Officer Standards and Training." (Cal. Code Regs., tit. 11, § 1005, subd. (c).)
[7] We generally do not address questions calling for an interpretation or application of local charters, regulations, or ordinances. (66 Ops.Cal.Atty.Gen. Foreword, p. IV (1983).)