TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|   |   |   |
|---|---|---|
| OPINION | : | |
| | : | No. 22-302 |
| of | : | |
| | : | May 5, 2022 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| MARC J. NOLAN | : | |
| Deputy Attorney General | : | |

---

MARK TARDIF, a registered voter and resident of the Orange County Department of Education's First Trustee District, has applied to this office for leave to sue REBECCA "BECKIE" GOMEZ in quo warranto to remove her from her public office as a member of the Orange County Board of Education representing the Department of Education's First Trustee District. The application asserts that Gomez, while serving her term on the County Board of Education, assumed a second and incompatible public office as a member of the Tustin City Council, in violation of Government Code section 1099, and by doing so forfeited her seat on the Board of Education.

We conclude that there is a substantial legal issue as to whether Gomez is simultaneously holding incompatible public offices as a member of both the Orange County Board of Education and the Tustin City Council. Consequently, and because the public interest will be served by allowing the proposed quo warranto action to proceed, the application for leave to sue is GRANTED.

1

22-302

## INTRODUCTION AND BACKGROUND

The Orange County Department of Education supports and oversees the finances of 28 school districts, which collectively serve more than 600 schools and approximately 475,000 students within Orange County.[1]  The Department also provides direct instruction to thousands of students throughout the county through its special education and alternative school programs, which include a number of "county community schools."[2]  The Department is governed by the Orange County Board of Education, which consists of five members who represent the five geographical trustee areas of the county.[3]  The voters of each trustee area elect their respective board members for four-year terms.[4]  Trustee District One includes the cities of Fountain Valley and Santa Ana, as well as portions of the cities of Garden Grove and Tustin.[5]

In the March 3, 2020 primary election, Rebecca "Beckie" Gomez was elected to a four-year term on the Orange County Board of Education representing the First Trustee District, and she was sworn into that office at the Board meeting held on July 1, 2020.[6]  In the November 3, 2020 general election—while already serving as a member of the Board of Education—Gomez won election to a four-year term on the Tustin City Council, and she was sworn into that office on December 1, 2020.[7]

---

[1] Orange County Dept. of Ed., About OCDE, https://ocde.us/AboutOCDE/Pages/default.aspx (as of Apr. 27, 2022).

[2] *Ibid.*; see Cal. Dept. of Ed., County Community Schools, https://www.cde.ca.gov/sp/eo/cc/ (as of Apr. 27, 2022) ("County community schools are public schools that are run by county offices of education. They educate students in kindergarten through grade twelve who are expelled from school or who are referred because of attendance or behavior problems. They also serve students who are homeless, on probation or parole, and who are not attending any school").

[3] Orange County Bd. of Ed., About the Board, https://ocbe.us/Pages/About.aspx (as of Apr. 27, 2022).

[4] *Ibid.*

[5] Orange County Bd. of Ed., Dist. 1, Rebecca "Beckie" Gomez, https://ocbe.us/Pages/Trustee-First-District.aspx, (as of Apr. 27, 2022).

[6] Orange County Dept. of Ed., Orange Co. Bd. of Ed., Minutes of July 1, 2020 Regular Meeting, p. 1, https://ocde.us/Board/Documents/2020%20Minutes%20and%20Transcripts/Minutes%2007.01.2020.pdf (as of Apr. 27, 2022).

[7] City of Tustin, City Council, Minutes of Dec.1, 2020 Regular Meeting, p. 4, https://www.tustinca.org/282/Meetings-Agendas (as of Apr. 27, 2022).

22-302

The applicant here is Mike Tardif, who resides in the Orange County Department of Education's First Trustee District. Tardif contends that the two offices Gomez currently holds are legally incompatible under Government Code section 1099. Section 1099(b) provides that an incumbent public officeholder who assumes a second, incompatible public office thereby forfeits the first office held, and that this forfeiture is enforceable through an action in quo warranto. Based on this alleged incompatibility of offices, Tardif requests our permission to initiate a quo warranto lawsuit in superior court that would seek to oust Gomez from her seat on the Orange County Board of Education. Tardif's application relies on Opinion No. 21-103, issued in October 2021, in which we granted a similar application to proceed in quo warranto against another County Board of Education member, Tim Shaw. Shaw was alleged to be holding incompatible offices as member of the Orange County Board of Education representing the Fourth Trustee District, and as a member of the La Habra City Council.[8] Tardif argues that the same result should obtain here because Gomez's dual office-holding necessarily entails the same incompatibility as Shaw's.

In opposition, Gomez contends that there is no incompatibility between the two offices she currently holds, and therefore disagrees with our prior opinion granting leave to sue against Shaw. In addition, Gomez argues that quo warranto is not even an available remedy under the circumstances and that, in any event, the public interest weighs against authorizing a quo warranto lawsuit here.

## ANALYSIS

Quo warranto is a civil action used, among other purposes, to challenge an incumbent public official's right or eligibility to hold a given public office.[9] This form of action is codified in section 803 of the Code of Civil Procedure, which provides that "[a]n action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[10]

---

[8] 104 Ops.Cal.Atty.Gen. 58 (2021). As noted in that opinion, the City of La Habra lies within the County Department of Education's Fourth Trustee District. After we granted that application, Shaw resigned from the County Board of Education and the La Habra City Council.

[9] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 162-163 (1993).

[10] Code Civ. Proc., § 803; see *Rando v. Harris* (2014) 228 Cal.App.4th 868, 873; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

22-302

Where, as here, a private party seeks to pursue a quo warranto action in superior court, that party (known in this context as a relator, or proposed relator) must first apply for and obtain the Attorney General's consent to do so. In determining whether to grant that consent, we do not attempt to resolve the merits of the controversy. Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the proposed relator has raised a substantial issue of law or fact that warrants judicial resolution, and (3) whether authorizing the quo warranto action will serve the public interest.[11] Here, the answer to all three questions is "yes" and we therefore grant leave to sue.

## 1. Availability of Quo Warranto Remedy

Section 1099(b) directs that the forfeiture of an incompatible public office is "enforceable pursuant to Section 803 of the Code of Civil Procedure," which authorizes an action in the nature of quo warranto to remove a person who unlawfully holds any public office. Under section 1099(a), a "public office" includes membership on a governmental board or body, such as a county board of education or a city council. Thus, quo warranto is an available and appropriate remedy here.

Without addressing section 1099(b), Gomez argues that quo warranto is unavailable. Specifically, she contends that because Orange County is a charter county, the Education Code vests the "manner of selection of the county board of education" in the county charter or the Board of Supervisors,[12] effectively insulating the selection of such officers from legal review on quo warranto. We disagree. Section 1099(b)'s prescription of quo warranto as the means of challenging and enforcing the forfeiture of a public office when legal incompatibility exists makes no exception for the circumstances Gomez cites. In any event, the challenge here has nothing to do with the manner of Gomez's selection to the County Board. Rather, it goes directly to the question of whether the two offices she currently holds are incompatible. Under the circumstances, section 1099(b) is properly invoked and authorizes quo warranto.

## 2. Substantial Issues Regarding Incompatibility

We next examine whether there are substantial issues of law or fact as to the incompatibility of the two public offices in question. Section 1099 provides that "[a] public officer, including, but not limited to, an appointed or elected member of a government board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible . . . , unless simultaneous holding of the

---

[11] *Rando v. Harris*, *supra*, 228 Cal.App.4th at pp. 868, 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[12] See Ed. Code, § 1000(a).

particular offices is compelled or expressly authorized by law."[13]  The prohibition "springs from considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[14]  Among other things, two offices are incompatible in circumstances where "there is a possibility of a significant clash of duties or loyalties between the offices."[15]  Upon a finding that two offices are legally incompatible, "a public officer shall be deemed to have forfeited the first office upon acceding to the second."[16]

To find that two offices are incompatible based on a significant clash of duties or loyalties, a conflict need not have actually occurred; it is enough that a conflict *may* occur in the regular operation of the statutory plan.[17]  It is not necessary that the clash of duties or loyalties occur in all or in the greater part of the official functions; incompatibility exists when the holder of the two offices cannot in every instance discharge the duties of each.[18]  Indeed, "[o]nly one potential significant clash of duties or loyalties is necessary to make offices incompatible."[19]  When two offices are deemed incompatible, the conflicted officeholder may not escape the effects of the doctrine by choosing not "'to perform one of the incompatible roles.  The doctrine was designed to avoid the necessity for that choice.'"[20]

As mentioned above, we recently determined in Opinion No. 21-103 that there was a substantial legal issue as to whether the public offices of member of the Orange County Board of Education and member of a city council for a city that lies within the same jurisdiction are legally incompatible.[21]  That opinion in turn relied on an opinion we issued in 2018 in which we determined that the comparable public offices of

---

[13] Gov. Code, § 1099(a).  No law compels or expressly authorizes the simultaneous holding of the offices at issue here.

[14] 68 Ops.Cal.Atty.Gen. 337, 339 (1985).

[15] Gov. Code, § 1099(a)(2).

[16] Gov. Code, § 1099(b).

[17] 98 Ops.Cal.Atty.Gen. 94, 96 (2015).

[18] *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 641-642.

[19] 85 Ops.Cal.Atty.Gen. 199, 200 (2002).

[20] 67 Ops.Cal.Atty.Gen. 409, 414 (1984), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, pp. 295-296.

[21] 104 Ops.Cal.Atty.Gen., *supra*, at pp. 61-65.

superintendent of a county office of education and member of a city council were incompatible where the territorial jurisdiction of the two offices overlapped.[22]

In Opinion No. 21-103, we found numerous instances where the duties and loyalties of an individual holding seats on both the Orange County Board of Education and a city council (for a city located within that county) could significantly clash. We observed, for example, that the two governing bodies could: differ on the location of school sites within the dual officeholder's city; attempt to use their powers of eminent domain to condemn and acquire the same (or each other's) real property; compete with each other in providing programs of community recreation; or disagree on matters relating to school district reorganizations.[23] The potential for such differing priorities and objectives creates conflict and incompatibility for a dual officeholder with an obligation to pursue the best interests of each of the agencies represented.[24] In addition, we noted that the Orange County Board of Education functions as a school district in certain respects (such as in its direct operation of county community schools), and that our conclusion was therefore consistent with previous Attorney General opinions concluding that offices of school district trustee and city council member were incompatible where their territorial jurisdiction overlapped.[25]

We recognize that Gomez disagrees with Opinion No. 21-103, in which we granted leave to sue Tim Shaw under markedly similar circumstances. In particular, she criticizes that opinion for what she contends is a failure to sufficiently address or explain what it means for a clash of duties or loyalties to be "significant" within the meaning of section 1099. But while Opinion No. 21-103 did not undertake to define the term "significant" explicitly,[26] the analysis makes clear that significant clashes appear in

---

[22] 101 Ops.Cal.Atty.Gen. 56 (2018). The offices at issue there were Superintendent of the Contra Costa County Office of Education and member of the City Council for the City of Concord, which lies within the boundaries of Contra Costa.

[23] 104 Ops.Cal.Att.Gen., *supra*, at pp. 62-64.

[24] *Ibid.*

[25] *Id.* at pp. 64-65; see, e.g., 73 Ops.Cal.Atty.Gen. 354, 356-357 (1990); 65 Ops.Cal.Atty.Gen. 606, 607-608 (1982); 48 Ops.Cal.Atty.Gen. 141, 143 (1966).

[26] In earlier opinions, we have noted that section 1099 provides no specific definition for the term "significant," and that traditional rules of statutory construction dictate giving the term its ordinary meaning. In this context, we have found that the term's ordinary meaning corresponds to the dictionary definitions of "significant" as "having or likely to have influence or effect," or "probably caused by something other than mere chance." (93 Ops.Cal.Atty.Gen. 104, 108 (2010); see 101 Ops.Cal.Atty.Gen. 81, 85-86 (2018); Webster's Eleventh Collegiate Dict. (2020) p. 1159.)

6

situations where the interests of both represented agencies diverge or conflict, adversely affecting the dual officeholder's ability to represent the best interests of each one.[27]

We stand by the analysis in Opinion No. 21-103 and conclude that it applies to Gomez's situation as well. Gomez will be able to raise her criticisms of that opinion and other substantive arguments to the superior court that decides the merits of this matter. As mentioned above, in deciding whether to grant leave to sue, we do not resolve the merits of the controversy. We merely determine whether the proposed relator has raised a substantial question of law or fact as to the proposed defendant's right or eligibility to hold office. For the reasons set forth above and in Opinion No. 21-103, we believe that there is, at the very least, a substantial issue as to whether the two offices Gomez currently occupies are incompatible.

## 3. The Public Interest Favors Authorizing the Proposed Action

We also conclude that it is in the public interest to have this matter conclusively resolved through the prescribed legal process of quo warranto.[28] We generally view the need for judicial resolution of a substantial question of fact or law as a sufficient "public purpose" to warrant granting leave to sue, absent countervailing circumstances.[29]

Gomez argues, however, that there *are* countervailing circumstances here. For one, she notes there are three cases already in litigation—which she characterizes as involving the Orange County Board of Education and the extent of its powers—that implicate the issues raised in this application, and that we should not authorize the proposed quo warranto lawsuit, at least not before the other cases are resolved. For another, she says that we should afford some deference to the fact that several individuals over the years have held simultaneous offices on the County Board and their respective city councils without facing a challenge to their incumbency in quo warranto. For a third, she contends that proposed relator Tardif, a current candidate for the State Assembly

---

[27] See 104 Ops.Cal.Atty.Gen., *supra*, at pp. 63 ("In these instances as well, the interests and purposes of the two agencies may well diverge, creating a conflict for a dual officeholder elected to represent the best interests of both"), 64 ("Thus, the Orange County Board of Education retains a substantial interest in school district reorganizations throughout the county, and that interest may well diverge with the interests of the City of La Habra and other cities within the county"), 65 ("An individual serving in both governing bodies could therefore encounter any number of situational conflicts because what is best for the city may not always be what is best for the school district (and vice-versa), thereby compromising the dual officeholder's ability to vigorously represent and advocate for both constituencies").

[28] See Gov. Code, § 1099(b).

[29] 98 Ops.Cal.Atty.Gen., *supra*, at p. 101; 95 Ops.Cal.Atty.Gen. 77, 87 (2012).

7

22-302

whom she alleges is pursuing this matter for political reasons, would be a "poor representative of the People." We are not persuaded.

First, none of the other cases involving the County Board addresses the allegation made here that Gomez is currently holding incompatible offices. And even assuming that a court's determination as to the extent of the County Board's authority or powers in some other dispute(s) might have some attenuated relevance to the present incompatibility question, it would not afford the relief sought in the proposed quo warranto action.

Second, the fact that the substantial question of incompatibility that we have identified here has not yet been judicially resolved despite other instances of potentially improper dual office holding is not a reason to deny the present application. If anything, the presence of an unresolved but recurring question actually weighs *in favor of* granting leave to sue here.

Third, as we have mentioned on prior occasions, "[w]e normally do not attempt to assess the motivation of individual relators."[30] Regardless of the purpose behind the filing of the application, "we are concerned with ensuring that all public officials have undivided loyalties when performing their public duties."[31]

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[30] 75 Ops.Cal.Atty.Gen. 112, 116 (1992); see also 95 Ops.Cal.Atty.Gen. 67, 75, fn. 39 (2012).

[31] 95 Ops.Cal.Atty.Gen., *supra*, at p. 75, fn. 39, and authorities there cited.