TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 21-103 |
| of | : | October 29, 2021 |
| ROB BONTA<br>Attorney General | : | |
| MARC J. NOLAN<br>Deputy Attorney General | : | |

_____


MELISSA LOUDEN has applied to this office for leave to sue TIM SHAW in quo warranto to remove him from his public office as a member of the Orange County Board of Education. The application asserts that Shaw, while serving his term on the County Board of Education, assumed a second and incompatible public office as a member of the La Habra City Council, in violation of Government Code section 1099, and by doing so forfeited his seat on the Board of Education.

We conclude that there is a substantial legal issue as to whether Shaw is simultaneously holding incompatible public offices as a member of both the Orange County Board of Education and the La Habra City Council. Consequently, and because the public interest will be served by allowing the proposed quo warranto action to proceed, the application for leave to sue is GRANTED.

## INTRODUCTION AND BACKGROUND

The Orange County Department of Education supports and oversees the finances of 28 school districts, which collectively serve more than 600 schools and approximately 475,000 students within Orange County.[1]  The Department also provides direct instruction to thousands of students throughout the county through its special education and alternative school programs, which include a number of "county community schools."[2]  The Department is governed by the Orange County Board of Education, which consists of five members who represent the five geographical trustee areas of the county.[3]  The voters of each trustee area elect their respective board members for four-year terms.[4]  Trustee District Four includes the cities of Buena Park, Fullerton, La Habra, Placentia, and parts of Anaheim.[5]

In the March 3, 2020 primary election, Tim Shaw was elected to a four-year term on the Orange County Board of Education representing the Fourth Trustee District, and he was sworn into that office at the Board meeting held on July 1, 2020.[6]  In the November 3, 2020 general election—while already serving as a member of the Board of Education—

---

[1] Orange County Dept. of Ed., About OCDE <https://ocde.us/AboutOCDE/Pages/default.aspx> (as of Oct. 26, 2021).

[2] *Ibid.*; see Cal. Dept. of Ed., County Community Schools <https://www.cde.ca.gov/sp/eo/cc/> (as of Oct. 26, 2021) ("County community schools are public schools that are run by county offices of education. They educate students in kindergarten through grade twelve who are expelled from school or who are referred because of attendance or behavior problems. They also serve students who are homeless, on probation or parole, and who are not attending any school").

[3] Orange County Dept. of Ed., About the Board <https://ocde.us/Board/Pages/About-the-Board.aspx> (as of Oct. 26, 2021).  The Board is also deemed to be in a school district in its own right in its operation of direct instruction community schools.  (Ed. Code, §§ 1980, 1984.)

[4] Orange County Dept. of Ed., About the Board <https://ocde.us/Board/Pages/About-the-Board.aspx> (as of Oct. 26, 2021).

[5] Orange County Dept. of Ed., Orange Co. Bd. of Ed., Dist. 4, Tim Shaw <https://ocde.us/Board/Pages/Shaw.aspx> (as of Oct. 26, 2021).

[6] Orange County Dept. of Ed., Orange Co. Bd. of Ed., Minutes of July 1, 2020 Regular Meeting <https://ocde.us/Board/Documents/2020%20Minutes%20and%20Transcripts/Minutes%2007.01.2020.pdf> (as of Oct. 26, 2021).

Shaw won election to a four-year term on the La Habra City Council, and he was sworn into that office on December 21, 2020.[7]

The applicant here is Melissa Louden, who resides in the Orange County Department of Education's Fourth Trustee District. Louden contends that the two offices Shaw currently holds are legally incompatible under Government Code section 1099 because of the possibility of significant clashes of duties and loyalties. Section 1099(b) provides that an incumbent public officeholder who assumes a second, incompatible public office thereby forfeits the first office held, and that this forfeiture is enforceable through an action in quo warranto. Based on this alleged incompatibility of offices, Louden requests our permission to initiate a quo warranto lawsuit in superior court that would seek to oust Shaw from his seat on the Orange County Board of Education. For his part, Shaw maintains that there is no incompatibility between the two offices he currently holds, and that we should therefore deny Louden's request.

Quo warranto is a civil action used, among other purposes, to challenge an incumbent public official's right or eligibility to hold a given public office.[8] This form of action is codified in section 803 of the Code of Civil Procedure, which provides that "[a]n action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[9]

Where, as here, a private party seeks to pursue a quo warranto action in superior court, that party (known in this context as a relator, or proposed relator) must first apply for and obtain the Attorney General's consent to do so. In determining whether to grant that consent, we do not attempt to resolve the merits of the controversy. Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the proposed relator has raised a substantial issue of law or fact that warrants judicial resolution, and (3) whether authorizing the quo warranto action will serve the public

---

[7] City of La Habra, City Council, Minutes of Dec. 21, 2020 Regular Meeting, p. 2 <https://lahabraca.gov/AgendaCenter/ViewFile/Minutes/_12212020-1413> (as of Oct. 26, 2021).

[8] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 76 Ops.Cal.Atty.Gen. 157, 162-163 (1993).

[9] Code Civ. Proc., § 803; see *Rando v. Harris* (2014) 228 Cal.App.4th 868, 873; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

interest.[10]   As we discuss below, the answer to all three questions in our consideration of the present application is "yes," and we therefore grant leave to sue.

## ANALYSIS

### 1.  Availability of Quo Warranto Remedy

Section 1099(b) directs that the forfeiture of an incompatible public office is "enforceable pursuant to Section 803 of the Code of Civil Procedure," which authorizes an action in the nature of quo warranto to remove a person who unlawfully holds any public office.  Under section 1099(a), a "public office" includes membership on a governmental board or body, such as a county board of education or a city council.[11]  Thus, quo warranto is an available and appropriate remedy here.

### 2.  Substantial Issues Regarding Incompatibility

We next examine whether there are substantial issues of law or fact as to the incompatibility of the two public offices in question.  Section 1099 provides that "[a] public officer, including, but not limited to, an appointed or elected member of a government board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible . . . , unless simultaneous holding of the particular offices is compelled or expressly authorized by law."[12]  The prohibition "springs from considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[13]

---

[10] *Rando v. Harris*, *supra*, 228 Cal.App.4th at pp. 868, 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[11] Apart from the statutory definition cited above, we have also previously concluded that the two types of offices at issue here are "public offices" for purposes of an incompatible public offices analysis.  (See, e.g., 79 Ops.Cal.Atty.Gen. 155, 157 (1996) [county board of education]; 98 Ops.Cal.Atty.Gen. 94, 96 (2015) [city council member].)  Under the criteria established by applicable precedent, each one is a public office because it is (1) a governmental position, (2) created by law, (3) having a continuing and permanent tenure, (4) in which the incumbent performs a public function for the public benefit and exercises some of the state's sovereign powers.  (See *Moore v. Panish* (1982) 32 Cal.3d 535, 545; *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 637-640 (*Rapsey*); 98 Ops.Cal.Atty.Gen., *supra*, at pp. 96-97.)

[12] Gov. Code, § 1099(a).

[13] 68 Ops.Cal.Atty.Gen. 337, 339 (1985).

Two offices are incompatible in circumstances where: (1) one of them has supervisory, audit, removal, or veto power over the other;[14] (2) "there is a possibility of a significant clash of duties or loyalties between the offices;"[15] or (3) "[p]ublic policy considerations make it improper for one person to hold both offices."[16] Upon a finding that two offices are legally incompatible, "a public officer shall be deemed to have forfeited the first office upon acceding to the second."[17]

We begin by dispensing with two criteria that are *not* at issue here. First, we observe that Shaw is not "compelled or expressly authorized by law" to simultaneously hold the two public offices at issue here within the meaning of section 1099(a), so that provision presents no bar to our consideration of potential incompatibility. In addition, neither office has supervisory, audit, removal, or veto power over the other within the meaning of section 1099(a)(1). Accordingly, we focus our attention on whether, as the application contends, there may be a significant clash of duties or loyalties, within the meaning of section 1099(a)(2), when the same individual is a member of both the Orange County Board of Education and the La Habra City Council.[18]

To find that two offices are incompatible based on a significant clash of duties or loyalties, a conflict need not have actually occurred; it is enough that a conflict *may* occur in the regular operation of the statutory plan.[19] It is not necessary that the clash of duty exist in all or in the greater part of the official functions; incompatibility exists when the holder of the two offices cannot in every instance discharge the duties of each.[20] Indeed, "[o]nly one potential significant clash of duties or loyalties is necessary to make offices incompatible."[21] When two offices are deemed incompatible, the conflicted officeholder

---

[14] Gov. Code, § 1099(a)(1).

[15] Gov. Code, § 1099(a)(2).

[16] Gov. Code, § 1099(a)(3).

[17] Gov. Code, § 1099(b).

[18] Because we conclude that there is a possibility of a significant clash of duties and loyalties between these offices, we do not find it necessary to analyze whether, as a separate matter, there may *also* be public policy reasons to prohibit the dual office-holding at issue here within the meaning of section 1099(a)(3). Nor does the application allege that the simultaneous holding of these particular offices is improper on the separate basis of public policy considerations.

[19] 98 Ops.Cal.Atty.Gen., *supra*, at p. 96.

[20] *Rapsey*, *supra*, 16 Cal.2d at pp. 641-642.

[21] 85 Ops.Cal.Atty.Gen. 199, 200 (2002).

may not escape the effects of the doctrine by choosing not "'to perform one of the incompatible roles.  The doctrine was designed to avoid the necessity for that choice.'"[22]  Instead, as mentioned above, a finding of incompatibility dictates that the dual officeholder forfeit the first office held.[23]

Turning to the particular offices at issue, one of our recent incompatible-office opinions directly informs our present analysis.  In that 2018 opinion, we determined that the public offices of superintendent of a county office of education and member of a city council were incompatible, due to a foreseeable clash of duties and loyalties, where (as here) the territorial jurisdiction of the two offices overlapped.[24]  After reviewing the duties of each office, we concluded that the offices were incompatible as there were "a number of areas in which one or more significant clash of duties or loyalties between the offices . . . could arise."[25]  Among these were the direct interactions that might occur between a city council and a county superintendent of schools, such as contracting to have local health agency personnel perform health supervision duties for school buildings and students.[26]  The county superintendent may also enter into agreements to provide audiovisual services and equipment to a city,[27] or to sell certain items of personal property belonging to the county office of education to a city.[28]

---

[22] 67 Ops.Cal.Atty.Gen. 409, 414 (1984), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, pp. 295-296.

[23] Gov. Code, § 1099(b).

[24] 101 Ops.Cal.Atty.Gen. 56 (2018).  The offices at issue there were Superintendent of the Contra Costa County Office of Education and member of the City Council for the City of Concord, which lies within the boundaries of Contra Costa County.  We issued the 2018 opinion as an advisory opinion in which we concluded as a matter of law that the offices in question were incompatible.  (101 Ops.Cal.Atty.Gen., *supra*, at p. 69; see Gov. Code, § 12519 [Attorney General shall provide written opinions in response to requests from specified public officials and agencies on questions of law relating to their respective offices]).  Here, in contrast, we are responding to a quo warranto application, and we are not asked to reach a conclusion of law on the merits.  Instead, as stated above, we simply determine here whether there is a substantial question of law or fact that warrants a judicial resolution.

[25] *Id.* at p. 60.

[26] See Health & Saf. Code, § 101425.

[27] Ed. Code, § 1251.

[28] Ed. Code, § 1279.  These latter agreements must be approved, however, by the county board of education.  (Ed Code, §§ 1251, 1279(a)(4).)

6

Of particular significance here, our finding of incompatibility between the offices of city councilmember and county superintendent relied in substantial part on the underlying relationships between the *city council* and the *county board of education*, of which the county superintendent is the ex officio executive officer.[29]  Notably, we observed that a city council and a county board of education may differ in their preferences for the location of school sites in areas within their respective and joint jurisdictions.[30]  That possibility exists here, as well.  The La Habra City Council must adopt a general plan that includes the locations of educational facilities.[31]  Those locations may conflict with the preferences of the county board of education.  Moreover, the Orange County Board of Education acts in the capacity of a school district in operating its own county community schools and, in doing so, may vote to override the City of La Habra's general plan and zoning restrictions with respect to the use of property held by the Orange County Department of Education for educational or instructional purposes.[32]  The county board's interest in locating one of its schools or programs at a particular site could clash with a city's interest in preserving its zoning regulations.

In addition, we recognized in our earlier opinion that "a county board of education may, under certain circumstances, exercise some of the same powers that a city council does," thereby giving rise to potential conflicts for an individual serving on both bodies.[33]  Similarly here, the Orange County Board of Education and the La Habra City Council may both exercise several powers in competing or conflicting ways.  For example, both have the power of eminent domain, creating the possibility that both bodies may wish to condemn the same property or even condemn property of the other.[34]  The county board and the city council also both have the authority to organize, promote, and conduct programs of community recreation, and they may jointly provide recreation or may compete with each other to do so.[35]  And both public agencies are authorized to enter into agreements with each other under the Joint Exercise of Powers Act, in order to jointly

---

[29] Ed. Code, § 1010.

[30] 101 Ops.Cal.Atty.Gen., *supra*, at p. 68.

[31] Gov. Code, §§ 65302(a), 65350, 65356.

[32] See 101 Ops.Cal.Atty.Gen., *supra*, at p 68 & fn. 77; Ed. Code, § 1984; Gov. Code, § 53094.

[33] 101 Ops.Cal.Atty.Gen., *supra*, at p. 68.

[34] See Gov. Code, § 37350.5; Ed. Code, § 1047; Code of Civ. Proc., § 1240.610.

[35] See Ed. Code, § 10905; 91 Ops.Cal.Atty.Gen. 61, 63, fn. 10 (2008).

exercise a power they have in common.[36] In these instances as well, the interests and purposes of the two agencies may well diverge, creating a conflict for a dual officeholder elected to represent the best interests of both.

Our earlier opinion also found it significant that the Contra Costa County Board of Education had a role in school district reorganizations and noted the potential for disagreement between the countywide agency and the affected individual cities within that county.[37] Here, Shaw attempts to distinguish his circumstances on the ground that the Orange County Board of Education (unlike its Contra Costa counterpart) does not itself act as the county committee on school district organization. But it is not correct that the Orange County Board "has no role" in school district reorganizations, as Shaw contends. To the contrary, in order to carry out its activities, the county committee relies on the county board for administrative and financial support. The county board provides all funding for the county committee to perform its duties, and this funding must be included in the budget approved by the board.[38] In addition, only the county board has the authority to request waivers from the State Board of Education from statutory requirements pertaining to reorganized school districts (such as election requirements or provisions setting the effective dates of reorganization).[39] Significantly, the county board may at any time petition the State Board of Education to transfer the duties and powers of the county committee back to the county board to act as the county committee on school district organization for Orange County.[40] Thus, the Orange County Board of Education retains a substantial interest in school district reorganizations throughout the county, and that interest may well diverge with the interests of the City of La Habra and other cities within the county.

Shaw also contends in general terms that our 2018 opinion is not relevant to his circumstances because he holds the office of *member trustee* of a county board of education and the prior opinion concerned the *superintendent* of a county board of education. We disagree. In our view, the logic of our 2018 opinion applies to Shaw's situation. A county

---

[36] See Gov. Code, § 6500 et seq. As we noted in our 2018 opinion, "[n]egotiating any such agreement, even if for the purpose of collaboration, would also entail a division of loyalties for a dual office holder." (101 Ops.Cal.Atty.Gen., *supra*, at p. 63 & fn. 47.)

[37] 101 Ops.Cal.Atty.Gen., *supra*, at pp. 66-67.

[38] See Ed. Code, §§ 1080, 1510, 1604, 1621-1622.

[39] See, e.g., Ed. Code, §§ 33050(a), 35534, 35710.

[40] Ed. Code, §§ 4020-4021. As mentioned earlier, to find two offices incompatible, a conflict need not have actually occurred; it is enough that a conflict *may* occur in the regular operation of the statutory plan. (98 Ops.Cal.Atty.Gen., *supra*, at p. 96.)

8

superintendent's loyalties to the county department of education are markedly similar to a board member trustee's loyalties to the county department of education. Those interests could diverge from the interests of a member of a city council in many of the same ways and for many of the same reasons. In other words, the distinction between the interests of a superintendent and member trustee would not appear to make a material difference to the analysis under Government Code section 1099. Either office would owe a duty of loyalty to the county department of education that could conflict with that owed by a city council member to a city within that same county.

And as mentioned, when it provides direct student instruction through its community schools, the Orange County Department of Education is also considered a school district in its own right.[41] As such, it has the same duties and responsibilities as other local school districts with respect to its students and facilities that are located at over 76 sites throughout the county, including in the City of La Habra. In this regard, we have previously found the public offices of a school board member and city council member with overlapping geographic jurisdictions to be incompatible because their essential functions and duties presented potential conflicts.[42] Indeed, we have identified numerous instances where a school board and a city council may engage in direct relationships, or contract with each other, including contracts between a school district and a city for community recreation,[43] health supervision,[44] library services,[45] and the sale or lease of real property.[46] In addition, either public body may condemn property of the other where a superior use can be shown;[47] school districts may dedicate real property to cities for certain public purposes;[48] a city may chart the location of future schools in its planning and zoning;[49] and city officials are charged with the enforcement of health and safety regulations within the schools.[50] An individual serving in both governing bodies could

---

[41] Ed. Code, §§ 1980, 1984.

[42] 65 Ops.Cal.Atty.Gen. 606, 607-608 (1982); 48 Ops.Cal.Atty.Gen. 141, 143 (1966); see 73 Ops.Cal.Atty.Gen. 354, 356-357 (1990).

[43] Ed. Code, § 10905.

[44] Ed. Code, § 49402.

[45] Ed. Code, §§ 18134-18136.

[46] 65 Ops.Cal.Atty.Gen., *supra*, at p. 607.

[47] Code Civ. Proc. § 1240.610.

[48] See Ed. Code, § 17556.

[49] Gov. Code, §§ 65302(a), 66478.

[50] Health & Saf. Code, § 101425.

9

therefore encounter any number of situational conflicts because what is best for the city may not always be what is best for the school district (and vice-versa), thereby compromising the dual officeholder's ability to vigorously represent and advocate for both constituencies.[51]

In sum, we find there to be multiple possibilities of a significant clash of duties or loyalties within the meaning of Section 1099(a)(2) for an individual who simultaneously holds both the offices at issue here. On this basis, we conclude that there is a substantial legal issue warranting judicial resolution as to whether the offices that Shaw now holds are incompatible, and whether he must therefore forfeit the first held office on the Orange County Board of Education.

## 3. The Public Interest Favors Authorizing the Proposed Action

Finally, we also conclude that it is in the public interest to have this matter conclusively resolved through the prescribed legal process of quo warranto. We generally view the need for judicial resolution of a substantial question of fact or law as a sufficient "public purpose" to warrant granting leave to sue, absent countervailing circumstances (such as pending litigation or the fact that an officeholder's term will soon expire) that are not present here.[52] Allowing the proposed quo warranto action to proceed would serve the public interest in ensuring that public officials avoid conflicting loyalties in performing their public duties. Accordingly, the application for leave to sue in quo warranto is GRANTED.

*****

---

[51] 65 Ops.Cal.Atty.Gen., *supra*, at p. 608; 48 Ops.Cal.Atty.Gen., *supra*, at p. 143.

[52] 98 Ops.Cal.Atty.Gen., *supra*, at p. 101; 95 Ops.Cal.Atty.Gen. 77, 87 (2012).