TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

| | : | |
| OPINION | : | |
| | : | No. 23-602 |
| of | : | |
| | : | November 30, 2023 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| CATHERINE BIDART | : | |
| Deputy Attorney General | : | |

The San Joaquin Delta Community College District has applied to this office for leave to sue KATHLEEN GARCIA in quo warranto to remove her from serving as a member of the San Joaquin Delta Community College District Board of Trustees. The application asserts that Garcia, while serving on that board, assumed a second and incompatible office as a member of the Eastside Rural Fire Protection District Board of Trustees in violation of Government Code section 1099, and by doing so forfeited her seat on the College District board.

We conclude that there is a substantial legal issue as to whether Garcia is simultaneously holding incompatible offices. Consequently, and because the public interest will be served by allowing the proposed quo warranto action to proceed, the application for leave to sue is GRANTED.

## BACKGROUND

Kathleen Garcia was elected in 2020 to serve a four-year term on the San Joaquin Delta Community College District Board of Trustees, which governs, maintains, and operates the San Joaquin Delta College.[1] While serving on that board, Garcia was

_____

[1] See Ed. Code, § 70902, subd. (a)(1); San Joaquin Delta College, "About San Joaquin

appointed in November of 2022 to the Eastside Rural Fire Protection District Board of Trustees, whose powers include providing fire protection, emergency medical services, and related education and training programs.[2] The fire protection district is located in unincorporated areas that are east of and adjacent to the City of Stockton, and it falls within a portion of the community college district's territory in San Joaquin County.[3] The community college district also reaches portions of the counties of Alameda, Sacramento, Solano, and Calaveras.[4]

The San Joaquin Delta Community College District (College District) contends that Garcia's simultaneous office-holding violates Government Code section 1099. That statute prohibits holding incompatible public offices and provides that assumption of a second office that is incompatible with the first results in forfeiture of the first office, which is enforceable by a superior court action in quo warranto. Based on the alleged incompatibility, the College District requests our permission to file a quo warranto action seeking Garcia's removal from its board, on the ground that she forfeited that position when she took office on the Eastside Rural Fire Protection District Board of Trustees. Garcia did not provide any response to the application. Having received no opposition, we proceed based on the application papers alone.

## ANALYSIS

Quo warranto is a civil action that is used, among other purposes, to challenge an incumbent public official's right or eligibility to hold a given public office.[5] Code of

---

Delta College," https://deltacollege.edu/about ("San Joaquin Delta College is a comprehensive public community college operated by the San Joaquin Delta Community College District") (as of Nov. 20, 2023).

[2] See Health & Saf. Code, §§ 13862, 13875, 13969; see also *id*., § 13861, subd. (i).

[3] See San Joaquin Local Agency Formation Commission, Eastside Rural Fire Protection District, https://www.sjlafco.org/eastside-rural-fire-protection-district (describing fire protection district areas) (as of Nov. 20, 2023); San Joaquin Local Agency Formation Commission, Eastside Rural Fire Protection District Map, https://www.sjlafco.org/files/d6515e6c3/Eastside_FD.pdf (as of Nov. 20, 2023); San Joaquin Delta College, District Map, https://deltacollege.edu/about/district-map (as of Nov. 20, 2023).

[4] San Joaquin Delta College, District Map, https://deltacollege.edu/about/district-map (as of Nov. 20, 2023).

[5] See Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; *People ex rel. Pennington v. City of Richmond* (1956) 141 Cal.App.2d 107, 117.

23-602

Civil Procedure section 803 authorizes this form of action, stating that it "may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[6] In this context, the term "private party" refers to any "individuals or entities other than the Attorney General," including a local agency such as the College District.[7]

When a party seeks to pursue a quo warranto action, that party must first apply for and obtain the Attorney General's consent to do so.[8] In determining whether to grant consent, we do not attempt to resolve the merits of the controversy.[9] Rather, we consider (1) whether quo warranto is an available and appropriate remedy; (2) whether the application raises a substantial issue of law or fact that warrants judicial resolution; and (3) whether authorizing the quo warranto action will serve the public interest.[10] Here, the answer to all three questions is "yes," and we therefore grant leave to sue.

## 1. Availability of Quo Warranto Remedy

The forfeiture of an incompatible public office is enforceable through a quo warranto action to remove a person who unlawfully holds public office.[11] As relevant here, a public office includes membership on a governmental board or body, such as a community college district board or a fire protection district board.[12] If those offices are incompatible, as alleged, then Garcia would have "resigned by operation of law" from the board of the San Joaquin Delta Community College District upon accession to the board of the Eastside Rural Fire Protection District, and would be unlawfully holding office on

---

[6] Code Civ. Proc., § 803; see *Rando v. Harris* (2014) 228 Cal.App.4th 868, 873; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

[7] *People ex rel. Lacey v. Robles* (2020) 44 Cal.App.5th 804, 826; see *id*. at pp. 815, 817.

[8] *Internat. Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 693-698.

[9] See, e.g., 95 Ops.Cal.Atty.Gen. 43, 49 (2012) ("To be clear, it is not our role here to predict how a court would ultimately resolve the question," and granting "leave is not an indication that the position taken by the relator is correct, but rather that the question should be judicially determined and that quo warranto is the only proper remedy").

[10] *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[11] Gov. Code, § 1099, subd. (b), citing Code Civ. Proc., § 803.

[12] Gov. Code, § 1099, subd. (a); 104 Ops.Cal.Atty.Gen. 15, 17, fn. 8 (2021); 97 Ops.Cal.Atty.Gen. 50, 52-53 (2014).

23-602

the board of the community college district.[13]  Thus, quo warranto is an available and appropriate remedy.

## 2.  Substantial Issue Regarding Incompatibility of Offices

We first examine the law on incompatible offices, then address whether a substantial issue of law or fact exists regarding the incompatibility of the two offices in question.  We conclude that such an issue exists.

### *Prohibition on Holding Incompatible Offices*

Government Code section 1099(a) provides that "[a] public officer . . . shall not simultaneously hold two public offices that are incompatible . . . unless simultaneous holding of the particular offices is compelled or expressly authorized by law."[14]  This prohibition "springs from considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[15]  As relevant here, two offices are legally incompatible if "there is a possibility of a significant clash of duties or loyalties between the offices."[16]  We have previously opined that a "significant" clash is one that is not trivial and is more certain than mere chance.[17]

To find that two offices are incompatible based on a significant clash of duties or loyalties, a conflict need not have actually occurred; it is enough that a conflict *might* occur in the regular operation of the statutory plan.[18]  Nor is it necessary for a clash of duties or loyalties to occur in all or in the greater part of the official functions.[19]  Indeed,

---

[13] 75 Ops.Cal.Atty.Gen. 112, 113-114 (1992); Gov. Code, § 1099, subd. (b); see 98 Ops.Cal.Atty.Gen. 94, 96 (2015) ("[A] person's assumption of the second incompatible office has the effect of automatically and immediately vacating the person's right to hold the first office," citing *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 644).

[14] The enactment of this statute codified the common law; the Legislature expressed its intent that existing judicial and administrative precedent would guide interpretation of the statute.  (Gov. Code, § 1099, subd. (f); Stats. 2005, ch. 254, §§ 1-2.)

[15] 68 Ops.Cal.Atty.Gen. 337, 339 (1985).

[16] Gov. Code, § 1099, subd. (a)(2).

[17] 104 Ops.Cal.Atty.Gen., *supra*, at p. 20; 93 Ops.Cal.Atty.Gen. 104, 108 (2010).

[18] 98 Ops.Cal.Atty.Gen., *supra*, at p. 96.

[19] *People ex rel. Chapman v. Rapsey*, *supra*, 16 Cal.2d at pp. 641-642.

4

"[o]nly one potential significant clash of duties or loyalties is necessary to make offices incompatible."[20]

When two offices are incompatible, the conflicted officeholder may not escape the effects of the prohibition by choosing not "to perform one of the incompatible roles."[21] Instead, under section 1099(b), the "officer shall be deemed to have forfeited the first office upon acceding to the second."

### *Substantial Issue of Incompatibility*

No law compels or expressly authorizes the simultaneous office-holding at issue here. We will therefore examine the powers and duties of the two offices to determine whether a substantial issue on incompatibility warrants judicial resolution.[22] We begin with the statutory powers of each district to provide education and training.

A fire protection district is to authorized operate educational programs, including those that help to prevent fire, eliminate life hazards, and prepare for medical emergencies.[23] And the board of a fire protection district may provide any training program for district employees, and shall provide emergency services training such as first aid to certain district employees.[24] A community college district board may provide similar educational and training programs, pursuant to the board's extensive powers to approve educational programs and courses of instruction.[25] The two districts could therefore become competitors—or collaborators—in providing educational and training programs. We observed in a prior opinion that "[e]ven in establishing or maintaining projects involving cooperation, collaboration, or assistance, as permitted by the governing statutes of the two types of districts, a member of the governing board of both districts is placed on both sides of the negotiating table."[26] As a result, we concluded that

---

[20] 85 Ops.Cal.Atty.Gen. 199, 200 (2002).

[21] 67 Ops.Cal.Atty.Gen. 409, 414 (1984), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, pp. 295-296.

[22] See *People ex rel. Chapman v. Rapsey*, *supra*, 16 Cal.2d at p. 642 ("'true test is whether the two offices are incompatible in their natures, in the rights, duties or obligations connected with or flowing from them,'" quoting 2 McQuillin, Municipal Corporations, *supra*, § 469.)

[23] Health & Saf. Code, § 13875.

[24] Health & Saf. Code, § 13969.

[25] See Ed. Code, § 70902.

[26] 104 Ops.Cal.Atty.Gen., *supra*, at p. 23.

5

a substantial issue of law warranted judicial resolution on incompatibility.[27]  We see no reason to depart from that outcome; instead, we see support for such an outcome based on the specific allegations made here.

First, the College District alleges that actual events illustrate the conflict created by the powers of education and training held in common by the two districts.  According to the College District, Garcia has allegedly sought collaboration between the College District and the Eastside Rural Fire Protection District (and a third-party commercial ambulance service provider) to create an Emergency Medical Technician and Paramedic program at the community college.  And Garcia has allegedly advocated against the creation of such a program with a different fire protection district.[28]  The College District explains that each district board on which Garcia sits would need to determine its level of participation in the program and whether an agreement or memorandum of understanding between the entities would be beneficial, and if so, the terms of such agreement or memorandum.  As the College District points out, each board in doing so might take a position that conflicts with, or is contrary to, the other board's interests.

The College District next alleges that further potential clashes of duties and loyalties could arise in matters involving real estate and eminent domain.  For instance, a fire protection district may acquire any property for the district's benefit and may "acquire by eminent domain any property necessary to carry out any of its powers or functions."[29]  Similarly, a community college district manages and controls district property and "may acquire by eminent domain any property necessary to carry out the powers or functions of the district."[30]  In a prior opinion, we concluded that two offices were legally incompatible because both entities "could seek to acquire the same property or the property of the other based on an asserted higher public use."[31]  At the very least then, the overlapping eminent domain powers here create a substantial issue of law warranting judicial resolution.  And it would be no different if the two districts sought to acquire a property interest in the same parcel, and could do so without exercising eminent domain powers in a condemnation action.

---

[27] *Ibid*.

[28] According to the College District, Garcia asked the community college's superintendent and president if Garcia should tell a different fire protection district who had expressed interest in the program to go "pound salt."

[29] Health & Saf. Code, § 13861, subds. (b) & (c).

[30] Ed. Code, § 70902, subd. (b)(6) & (13); see also Ed. Code, §§ 81250-81440 (property-related powers), 81470-81474 (same).

[31] 101 Ops.Cal.Atty.Gen. 81, 86 (2018); see Code Civ. Proc., §§ 1240.610, 1240.660.

The College District also generally asserts that a potential significant clash of duties and loyalties might arise in the realm of fire code enforcement.[32] A fire protection district board may make and enforce rules and regulations to administer, operate, and maintain services including fire protection and any other services relating to the protection of lives and property.[33] More specifically, the board is empowered to issue written orders "to correct or eliminate a fire hazard or life hazard."[34] This power to issue an order to correct or eliminate such a hazard on any community college district property located within the fire protection district's territory could create conflicting loyalties and duties because what is best for the fire protection district might not be so for the community college district. For example, the two districts might have different views on what measures of fire protection are required or optimal. Upon issuing such an order, the recipient community college district would have to decide whether to request a hearing to challenge the order, after which the fire protection district board "may modify, vacate, or affirm the order."[35] At each stage of the process, an officer serving on the board of each district would be on both sides of a dispute over the propriety of the order.

Yet another potential conflict might arise from the fire protection district board's authority to charge a fee, even to public agencies such as a community college district, to cover the cost of enforcing a regulation or providing any service.[36] The board may waive a fee if doing so would be in the public interest.[37] One board could thus charge (or waive) fees that would obligate the other board to pay (or relieve it from having to pay).

---

[32] Because the College District territory expands well beyond the territory of the fire protection district, it so happens that the campus of San Joaquin Delta College itself is not located within the territory of the fire protection district. (See notes 3-4, *ante*, and accompanying text in the body.) We are not informed whether the College District presently holds any property other than the college campus, and if so, whether such other property is located within the territory of the fire protection district. Regardless, the College District could at any time acquire property within the territory of the fire protection district, so we will consider how a fire protection district's enforcement powers could affect a community college district.

[33] Health & Saf. Code, §§ 13861, subd. (i), 13862, subd. (f).

[34] Health & Saf. Code, § 13870, subd. (a). A failure or refusal to correct the cited hazard is punishable by misdemeanor. (Health & Saf. Code, § 13871, subd. (b).)

[35] Health & Saf. Code, § 13870, subds. (b) & (c).

[36] Health & Saf. Code, §§ 13910, 13916, subd. (a), 13918 ("Notwithstanding Section 6103 of the Government Code, a district board may charge a fee authorized pursuant to Section 13916 to other public agencies").

[37] Health & Saf. Code, § 13919.

7

It is therefore conceivable that the interests of the two boards could diverge with regard to these fees.

Lastly, a fire protection district board is statutorily empowered to form service zones within which a different level of service is provided, and within this zone may charge a fee for those services.[38] This authority to assign a different level of service and fees to an area within the jurisdiction of the College District could create further sources of conflict between the two district boards. Again, what might be best for one district might not be best for the other.

Based on all of the above, we conclude that whether the two offices Garcia holds are incompatible presents a substantial issue of law that warrants judicial resolution.

### 3. The Public Interest Favors Authorizing Suit

Finally, we conclude that it is in the public interest to have this matter conclusively resolved through the prescribed legal process of quo warranto.[39] We generally view the need for judicial resolution of a substantial question of law as a sufficient "public purpose" to warrant granting leave to sue, absent countervailing circumstances such as pending litigation or shortness of time remaining in the term of office.[40] There are no such circumstances here. The office that Garcia allegedly forfeited on the board of the College District has a term that expires in December 2024, meaning that approximately one year remains before the term ends. Moreover, allowing the proposed quo warranto action to proceed would serve the public interest in ensuring that public officials avoid impermissible conflicting loyalties in performing their public duties.

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[38] Health & Saf. Code, §§ 13950-13951.

[39] See Gov. Code, § 1099, subd. (b).

[40] 98 Ops.Cal.Atty.Gen., *supra*, at p. 101; 95 Ops.Cal.Atty.Gen. 77, 87 (2012).

23-602