TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | |
| of | : | No. 25-501 |
| | : | |
| | : | September 11, 2025 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| CATHERINE BIDART | : | |
| Deputy Attorney General | : | |

The WHITTIER UNION HIGH SCHOOL DISTRICT would like to file a lawsuit in state court against GARY MENDEZ to remove him from public office as a school board trustee. Before this type of lawsuit may be filed, state law requires Attorney General permission known as "leave to sue in quo warranto." In seeking permission, the School District asserts that when Mendez took office on a water board with interrelated powers and overlapping territory with the School Board, it created a possibility for conflict between the offices that makes them "incompatible," resulting in forfeiture by state law (Government Code section 1099) of his school board trusteeship. Forfeiture of the office first held (on the School Board) safeguards loyalty to a single office—the one most recently chosen, on the water board.

The School District's proposed lawsuit meets all three of the Attorney General's criteria to grant leave to sue: it is correctly brought through the quo warranto process, it raises a substantial legal issue for judicial resolution, and such resolution would serve the public interest. Consequently, we GRANT leave to sue.

**BACKGROUND**

We begin by explaining further what it means to apply to the Attorney General for leave to sue in quo warranto. "Quo warranto" means "by what authority," and was the legal process used by English monarchs to challenge a royal subject's claim to a franchise

1

or office supposedly granted by the Crown.[1]  As relevant here, the term now refers to the legal process to challenge the right or eligibility to a public office.[2]  This process is governed by state law set forth in Code of Civil Procedure sections 803 through 811, in a chapter titled "Actions for the Usurpation of an Office or Franchise."[3]  The code does not use the term quo warranto, but courts and lawyers still use it for convenience.[4]

An entity or person who wishes to sue in quo warranto must both serve the proposed defendant with a copy of the application for permission to sue, and submit the application to the Attorney General, who determines whether the proposed lawsuit may proceed to court.[5]  The School District's application before us includes a document formally giving notice of the application to the proposed defendant (Mendez), a supporting memorandum, a verified complaint and statement of supporting facts to be filed in court if leave to sue is granted, and proof of service (that is, a document showing Mendez was personally given a copy of the application papers).[6]  Mendez did not respond.  Our recital of relevant facts is therefore drawn from the School District's application and publicly available information.

---

[1] California Attorney General's Office, Quo Warranto (1990), p. 1, at https://oag.ca.gov/sites/all/files/agweb/pdfs/ag_opinions/quo-warranto-guidelines.pdf (as of Sept. 9, 2025); *International Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 695-696.

[2] California Attorney General's Office, Quo Warranto, *supra*, at p. 3; see Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225.

[3] Code Civ. Proc., §§ 803-811.

[4] *People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto* (2024) 102 Cal.App.5th 602, 618, fn. 5.

[5] *Id.* at pp. 619 ("The gatekeeping role of the Attorney General is intentional. . . . [T]he Attorney General is the proper one to determine, in the first instance, when the public interests justify a resort to this remedy") & 620, citing Cal. Code Regs., tit. 11, § 1 (requiring that application for "leave to sue" be served and filed).

[6] See Cal. Code Regs., tit. 11, § 2 (requiring that application include these documents). The proof-of-service document contains the sworn statement by a process server of personally giving the documents to the proposed defendant.  Online news sources appear to corroborate that Mendez received the papers.  (See Hews Media Group, Los Cerritos Community News, "Whittier Union Files Formal Quo Warranto Complaint to Remove Trustee Gary Mendez," published May 17, 2025, at https://www.loscerritosnews.net/2025/05/17/exclusive-whittier-union-files-formal-quo-warranto-complaint-to-remove-trustee-gary-mendez/ [as of Sept. 9, 2025] [reporting that Mendez took "subpoena" from process server].)

25-501

The School District covers 40-plus square miles of southeast Los Angeles County and serves eight schools (five high schools, one adult school, one alternative studies school, and one continuation school).[7]  A board of five trustees governs the School District.[8]  Mendez was elected trustee in November 2022, and his term of office began in December 2022 and expires in November 2026.[9]  While serving as trustee, Mendez was elected in November 2024 to serve a four-year term as board director of a water district—the Central Basin Municipal Water District—that covers 221 square miles and encompasses the entire School District.[10]  Mendez took office as a board director in December 2024.[11]

The School District contends that Mendez forfeited his position on the School Board by assuming office as a Water District director.  Under state law (Government Code section 1099), a person forfeits an existing public office upon taking a second office that is incompatible with the existing office, leaving the person in the second office only.[12]  A prior Attorney General opinion concluded outright that offices just like those in question here—membership on a school board and a municipal water board—are

[7] See Whittier Union High School District, Our District, District Information, at https://www.wuhsd.org/apps/pages/index.jsp?uREC_ID=749661&type=d&pREC_ID=1159212 (as of Sept. 9, 2025).

[8] See Whittier Union High School District, Board of Trustees, Meet the Board, at https://www.wuhsd.org/apps/pages/index.jsp?uREC_ID=753074&type=d&pREC_ID=1160588 (as of Sept. 9, 2025).

[9] *Ibid*.

[10] Compare Whittier Union High School District, Our District, Home School Look Up, at https://www.wuhsd.org/apps/pages/index.jsp?uREC_ID=749661&type=d&pREC_ID=1159273 (as of Sept. 9, 2025) with Central Basin Municipal Water District, About Us, Service Area, at https://www.centralbasin.org/about-us/service-area (as of Sept. 9, 2025); see Central Basin Municipal Water District, Board of Directors, Meet the Board, Mendez, Gary, at https://www.centralbasin.org/Home/Components/StaffDirectory/StaffDirectory/21/75 (as of Sept. 9, 2025).

[11] See Wat. Code, § 71252 (specifying four-year terms of municipal water district board directors); Central Basin Municipal Water District, Board of Directors, Meet the Board, Mendez, Gary, at https://www.centralbasin.org/Home/Components/StaffDirectory/StaffDirectory/21/75 (as of Sept. 9, 2025) (stating Mendez's term of office expires December 2028).

[12] Gov. Code, § 1099, subd. (b); *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 644 ("The rule is settled with unanimity that where an individual is an incumbent of a public office and, during such incumbency, is appointed or elected to another public office, and enters upon the duties of the latter, the first office becomes at once vacant if the two are incompatible," internal quotation marks omitted).

3

incompatible.[13]  And multiple Attorney General opinions have granted leave to sue to enforce forfeitures by persons purporting to hold offices on a school board and a water board (or board with similar powers as a water board).[14]  No intervening authority calls these opinions into question.  Here, Mendez took office on a municipal water board but purports to remain in office on a school board, prompting the School District to seek a court order enforcing the forfeiture that occurs upon taking an incompatible office.

## ANALYSIS

As explained above, quo warranto is the legal process to challenge a person's right or eligibility to hold a public office.[15]  State law allows such a lawsuit to be brought in the name of the people of the state by the Attorney General directly, or with his permission through a relator, "against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[16]

To grant a proposed relator's quo warranto application, we must conclude that: (1) quo warranto is the correct legal process to address what is alleged, (2) the application raises a substantial issue of fact or law that is appropriate for judicial resolution, and (3) authorization of the quo warranto lawsuit would serve the public interest.[17]  Here, all three criteria are met.

## 1. Quo Warranto Is the Correct Legal Process To Enforce Office Forfeiture

State law provides that the forfeiture of a "public office" by taking a second public office that is incompatible with the first is enforceable by quo warranto.[18]  A "public

---

[13] 85 Ops.Cal.Atty.Gen. 60, 62 (2002).

[14] See fns. 37-41, *post*, and related text in the body.

[15] *Nicolopulos v. City of Lawndale*, *supra*, 91 Cal.App.4th at p. 1225, citing Code Civ. Proc., § 803.

[16] Code Civ. Proc., § 803 ("An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state"); *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875; see *People ex rel. Lacey v. Robles* (2020) 44 Cal.App.5th 804, 815, 817 (explaining that statute's reference to "private party" includes local government entity); Cal. Code Regs., tit. 11, §§ 1-2 (referring to applicant as "relator").

[17] See *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 879, quoting 72 Ops.Cal.Atty.Gen. 15, 20 (1989).

[18] Gov. Code, § 1099, subd. (b), citing Code Civ. Proc., § 803.

4

office" for these purposes includes serving on a school board and a water board, such as the Whittier Union High School District Board of Trustees and the Central Basin Municipal Water District Board of Directors.[19]  Incompatibility of these offices would mean that Mendez "resigned by operation of law" as a school board trustee when he became a water board director and that he remains in office as a trustee unlawfully.[20]  Quo warranto is therefore the correct legal process to remove him from that office.

## 2. Substantial Issue for Judicial Resolution Regarding Incompatibility of Offices

In this section, we first set forth the law against holding incompatible offices, then we explain why we conclude there is an incompatible-offices issue here that is appropriate for judicial resolution.

### *Prohibition on Holding Incompatible Offices*

Government Code section 1099 contains the prohibition against holding incompatible offices.[21]  The prohibition is based on a policy that the public is best served when officers perform their duties without conflicting loyalties that might arise by holding two offices.[22]  When two offices are incompatible, a dual officeholder may not escape the prohibition by choosing not "to perform one of the incompatible roles."[23]  Instead, the first office is deemed forfeited.[24]  While incompatibility may be overridden

[19] Gov. Code, § 1099, subd. (a); 85 Ops.Cal.Atty.Gen., *supra*, at p. 61 ("A member of the governing board of a school district holds a public office for purposes of the common law prohibition (84 Ops.Cal.Atty.Gen. 91, 92 (2001); 56 Ops.Cal.Atty.Gen. 488, 489 (1973)), as does a member of the board of directors of a municipal water district (80 Ops.Cal.Atty.Gen. 242, 244 (1997); cf. 82 Ops.Cal.Atty.Gen. 68, 69 (1999) [county water district], 76 Ops.Cal.Atty.Gen. 81, 83 (1993) [special act water district], 75 Ops.Cal.Atty.Gen. 10, 13 (1992) [California water district], 73 Ops.Cal.Atty.Gen. 268, 270 (1990) [community services district water agency].)").

[20] *Ante*, fn. 12.

[21] This statute codifies the developed case law—also known as the common law—which continues to inform the prohibition now in the statute.  (Gov. Code, § 1099, subd. (f); Stats. 2005, ch. 254, § 2 ["Nothing in this act is intended to expand or contract the common law rule prohibiting an individual from holding incompatible public offices.  It is intended that courts interpreting this act shall be guided by judicial and administrative precedent concerning incompatible public offices developed under the common law"].)

[22] 68 Ops.Cal.Atty.Gen. 337, 339 (1985).

[23] 67 Ops.Cal.Atty.Gen. 409, 414 (1984), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, pp. 295-296.  The prohibition "was designed to avoid the necessity for that choice."  (*Ibid*.)

[24] Gov. Code, § 1099, subd. (b).

5

by a state law that compels or expressly authorizes simultaneously holding the two offices, no such law exists here.[25]

Offices are incompatible when there is a possible "significant"—that is, not merely trivial, and more certain than mere chance—clash of duties or loyalties between the offices in light of their respective powers and jurisdiction.[26] A conflict need not have actually occurred; it is enough that a conflict *might* occur in the lawful exercise of powers allotted to the respective offices.[27] "Only one potential significant clash of duties or loyalties is necessary to make offices incompatible."[28] The potential for a significant clash is not necessary in all or in the greater part of the official functions.[29] If a dual officeholder's ability to vigorously represent and advocate for each entity's constituency might be compromised, the first office is forfeited to preserve loyalty to a single office's constituency—the one the officeholder most recently chose.

Simultaneously serving two separate entities with overlapping jurisdiction and interrelated powers might cause conflicting duties or loyalties because what is best for one entity might not always be what is best for the other. We will now examine the interrelated powers and duties of a school district and a water district.

### *Substantial Issue on Incompatibility*

A school district's powers and duties are implemented by its board, and a water district's powers are implemented by its board.[30] A school district is responsible for

---

[25] See Gov. Code, § 1099, subd. (a); cf. Wat. Code, §§ 71265-71267 (setting forth provisions that apply solely to Central Basin Municipal Water District, which contain nothing on simultaneously holding office on school board).

[26] Gov. Code, § 1099, subd. (a)(2) (referring to possible "significant" clash based on powers and jurisdiction of two offices); 104 Ops.Cal.Atty.Gen. 16, 21 (2021) (interpreting "significant"). Incompatibility also exists when one office has supervisory, auditory, removal, or veto power over the other office. (Gov. Code, § 1099, subd. (a)(1).) Neither office before us has such power over the other. In addition, two offices are incompatible if "[p]ublic policy considerations make it improper for one person to hold both offices." (Gov. Code, § 1099, subd. (a)(3).)

[27] 104 Ops.Cal.Atty.Gen. 58, 61 (2021), citing 98 Ops.Cal.Atty.Gen. 94, 96 (2015).

[28] 85 Ops.Cal.Atty.Gen. 199, 200 (2002).

[29] *People ex rel. Chapman v. Rapsey*, *supra*, 16 Cal.2d at pp. 641-642.

[30] Ed. Code, § 35161; Wat. Code, § 71300.

25-501

obtaining water and sewage disposal services for its schools.[31]  And a water district is empowered to supply water and sewerage services.[32]  Given the geographic overlap between the districts here, interrelated powers and duties appear to exist because one entity may obtain a product or service from the other entity.[33]

And indeed, according to the School District, the Water District sells water to vendors who in turn sell it to the School District.  The website of the Water District corroborates that it sells water to multiple retailers.[34]  It does not appear that the Water District provides sewerage services, but what is relevant is that state law empowers it to do so.[35]

Outside of the quo warranto context, in which we evaluate whether *a substantial issue* exists as to incompatibility, we have previously concluded *outright* that offices on a school board and a municipal water board—the exact type of offices as here—are incompatible because their interrelated powers and duties relating to water and sewage create possible significant clashes of duties or loyalties.[36]  Moreover, multiple Attorney General opinions have granted leave to sue based on the alleged incompatibility of offices on a school board and a water board or other board with similar powers relating to water and sewers:

---

[31] 85 Ops.Cal.Atty.Gen., *supra*, at p. 61 (explaining that "board of trustees of a school district has the responsibility of obtaining necessary water supplies and sewage disposal services for the district" based on Education Code sections 17556, 17569, 17577, none of which have since been amended); see also Ed. Code, § 38086 (requiring school districts to provide free access to fresh drinking water during meal times, enacted in 2010); Stats. 2010, ch. 558, § 1 (enacting section 38086).

[32] 85 Ops.Cal.Atty.Gen., *supra*, at p. 61 (explaining these powers among others of water districts, and citing Water Code sections 71611 [empowering municipal water district to sell water], 71670 [empowering such district to provide sewage disposal services], which have not since been amended).

[33] See fns. 46-54, *post*, and related text in the body.

[34] Central Basin Water District, About Us, at https://www.centralbasin.org/about-us (as of Sept. 9, 2025).

[35] Gov. Code, § 1099, subd. (a)(2).

[36] 85 Ops.Cal.Atty.Gen., *supra*, at p. 62; see also 65 Ops.Cal.Atty.Gen. 606, 607, 609 (1982) (concluding that offices on school district board and city council are incompatible because, among other things, city and school are authorized to contract with each other for sewerage facilities).

25-501

- 2019 – Vineland School District Trustee and Lamont Public Utility District Director.[37]

- 2004 – Baldwin Park Unified School District Trustee and Valley County Water District Director.[38]

- 1992 – Rim of the World Unified School District Trustee and Lake Arrowhead Community Services District Director.[39]

- 1990 – Victor Valley Union High School District Trustee and Victor Valley County Water District Director.[40]

- 1990 – Brittan School District Trustee and Sutter Community Services District Director.[41]

We perceive no reason to depart from the conclusions reached in these prior opinions, and conclude here that, at a minimum, there is a substantial issue for judicial resolution on whether Mendez forfeited his office as school board trustee by taking office on the water board. While many of these opinions predated Government Code section 1099 (enacted in 2005), it makes no difference because section 1099 adopts the incompatibility test our prior opinions applied.[42] The Court of Appeal recently explained as much in *People ex rel. Lacey v. Robles*.[43] With specific reference to the above 2004 Attorney General opinion, the *Robles* court explained:

---

[37] 102 Ops.Cal.Atty.Gen. 31 (2019). Like a water district, a public utility district may supply water and sewerage services. (*Id*., pp. 33-34, 37 & fns. 21 & 35, citing Pub. Util. Code, §§ 16031, 16461.)

[38] 87 Ops.Cal.Atty.Gen. 153, 156 (2004); see *id*., pp. 154-155 (discussing school board and county water district powers, and concluding same potential for clash exists as in prior opinions). A county water district remains empowered to supply water and sewage disposal services. (Wat. Code, §§ 31020 et seq. [water], 31100 [sewage disposal].)

[39] 75 Ops.Cal.Atty.Gen. 112 (1992); see *id*., pp. 115-116 (recounting community services district powers to supply water and provide sewage disposal among other services); see also fns. 46-47, *post*, and related text in the body.

[40] 73 Ops.Cal.Atty.Gen., *supra*, at p. 268; see *ante*, fn. 38.

[41] 73 Ops.Cal.Atty.Gen. 183, 185 (1990); see fn. 45, *post*, and related text in the body.

[42] See *ante*, fn. 21.

[43] *People ex rel. Lacey v. Robles*, *supra*, 44 Cal.App.5th 804. In *Robles*, the Court of Appeal upheld the trial court's conclusion that defendant Albert Robles held

(continued…)

8

Section 1099's definition of incompatible offices is not materially different from the formulation recited in an Attorney General quo warranto opinion . . . [which] authorized a quo warranto suit against Blanca Rubio, who was serving as a director of a water district and as a trustee of a school district within the same water district. (87 Ops.Cal.Atty.Gen. 153 (2004) (the Rubio Opinion).) Citing prior Attorney General opinions that rely, among other things, on a 1940 case decided by our Supreme Court (*People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636 . . . ), the Rubio Opinion [authorizing a quo warranto suit] states *the following test for incompatibility*, which was later *incorporated in Section 1099*: "'Offices are incompatible if one of the offices has supervisory, auditory or removal power over the other or if there would be any significant clash of duties or loyalties in the exercise of official duties. Only one potential significant clash of duties or loyalties is necessary to make offices incompatible.' [85 Ops.Cal.Atty.Gen. 60, 61 (2002).]" (87 Ops.Cal.Atty.Gen., *supra*, 154 [2004].) [44]

As expected then, the interrelated powers and duties of the offices at issue here still raise the same incompatibility flags that they have since our first 1990 quo warranto opinion on offices with similar powers. In that opinion, we granted leave to sue in the context of a school district trustee and community services district officer where the latter supplied water to the former.[45] Soon after in 1992, the incompatibility of those same offices was before us again, and we referred to our prior reasoning:[46]

Whether the two offices at issue are incompatible need not be extensively discussed. The precise question was analyzed recently in 73 Ops.Cal.Atty.Gen. 183 (1990). In [that] opinion, a community services district supplied water to a school district. We analyzed the duties of the community services district director with respect to (1) determining water rates for various users, (2) taking action to collect unpaid charges, (3) assessing penalties, (4) entering into contracts with other public entities for the installation of requisite water facilities, and (5) imposing capital facilities fees on water users and contracts with respect thereto. We also pointed out that the same person, as a school district trustee, would be involved in matters such as (1) whether to pay for or contest charges for

---

incompatible offices—there, the offices of city mayor and member of a regional water district's governing board—which supported his removal from the latter office in quo warranto. (*Id.* at pp. 818-825.)

[44] *Id.* at pp. 818-819, italics added.

[45] 73 Ops.Cal.Atty.Gen., *supra*, at p. 185.

[46] 75 Ops.Cal.Atty.Gen., *supra*, at pp. 113, 115.

water services, which if unpaid could become a lien upon school district property, and (2) any contract negotiations with the community services district over matters of mutual interest.  Based solely upon the fact that the community services district was supplying water to the school district, we concluded that leave to sue should be granted.  We stated [¶] ". . . We predicate upon this function alone, without regard to the numerous others which may be assumed in the future, our determination that principal or important duties, functions, and responsibilities of the respective offices either are or might come into conflict." [47]

We see no intervening reason why the potential water-related conflicts discussed in these earlier opinions would not pose the same possible conflicts here now.

And recall that we concluded *outright* in 2002 that the same offices at issue here were incompatible because of their interrelated powers and duties relating to water and sewerage services.[48]  Our 2002 opinion involved facts similar to those here, where no direct relationship existed between the school district and the water district.[49]  The school district obtained potable water from retailer water agencies supplied by the water district, but obtained most of its irrigation water from the school district's own wells, and had its own septic tanks for sewage disposal.[50]  We identified a possible conflict because the water district set the wholesale water rate that the retailers passed along to end-users (including the school district).[51]  We identified another possible conflict because the school district could decide to abandon its wells and obtain all of its irrigation water indirectly from the water district.[52]  We identified a further possible conflict because the school district could decide to abandon its septic tanks and instead use the water district's sewer system.[53]  We explained that these possible decisions would affect the school district and water district in different ways, and that what may be in the best interests of one might not be in the best interests of the other.[54]  These conflicts remain as possible now as they did then.

The powers related to water and sewers are not the only relevant ones here either. For example, a water district is authorized to provide sanitation and fire-protection

---

[47] *Id.* at p. 115, quoting 73 Ops.Cal.Atty.Gen., *supra*, at p. 185.

[48] 85 Ops.Cal.Atty.Gen., *supra*, at p. 62.

[49] *Id*. at p. 60.

[50] *Ibid*.

[51] *Id*. at p. 62.

[52] *Ibid*.

[53] *Ibid*.

[54] *Ibid*.

10

services, which a covered school district could employ.[55]  The question of whether to add one or more of these services would place a person on the board of both districts on opposing sides of transactions relating to those services.

Furthermore, school districts and water districts have eminent domain power over each other for a superior purpose.[56]  So either district could pursue a legal right in eminent domain to acquire the other entity's property.  On numerous occasions we have determined that this common power of eminent domain creates a significant division of loyalties.[57]

Based on all of the above, we conclude there is a substantial legal issue regarding whether the offices in question are incompatible, such that Mendez forfeited his office as a school board trustee when he took office as a water board director.

### 3.  The Public Interest Favors Authorizing Suit

Finally, we conclude that it is in the public interest to have this matter conclusively resolved through the legal process of quo warranto.  We generally view the presence of a substantial issue warranting judicial resolution as a sufficient public purpose to grant leave to sue, absent countervailing circumstances that are not present here, such as related ongoing litigation or too little time left in the term of office for judicial resolution to be likely.[58]  Here, allowing the proposed quo warranto action to proceed would serve the public interest by ensuring public officials avoid conflicting loyalties in performing public duties.

For these reasons, the application for leave to sue in quo warranto is GRANTED.

---

[55] See, e.g., Wat. Code, §§ 71670 (authorizing "sewage, waste, and storm water" services), 71680 (fire protection), 71689.20 (authorizing "garbage, waste, and trash" services); see generally Wat. Code, § 71000 et seq. ("Municipal Water District Law of 1911"); Central Basin Water District, About Us, at https://www.centralbasin.org/about-us (as of Sept. 9, 2025).

[56] Code Civ. Proc., § 1240.610 (providing for eminent domain over public property where there is a "more necessary public use"); Ed. Code, §§ 35270.5, 35162; Wat. Code, §§ 71693-71694.

[57] See, e.g., 98 Ops.Cal.Atty.Gen., *supra*, at p. 100; 76 Ops.Cal.Atty.Gen., *supra*, at p. 85 (listing matters of mutual concern, including common right of eminent domain, that render "offices incompatible as a matter of law"); 75 Ops.Cal.Atty.Gen., *supra*, at pp. 13-14; 68 Ops.Cal.Atty.Gen. 171, 173-174 (1985).

[58] 98 Ops.Cal.Atty.Gen., *supra*, at p. 101; 87 Ops.Cal.Atty.Gen., *supra*, at p. 156 (2004). Mendez's term of office as trustee does not expire until November 2026, making it likely there is ample time remaining for judicial resolution before the term ends.

25-501